MICHAEL E. HEYGOOD,
PSC Member/MDL No. 2672-CRB
Texas Bar No. 00784267
CHARLES MILLER,
ESQ./SBN: 276523
**HEYGOOD, ORR & PEARSON**
6363 North State Highway 161
Suite 450
Irving, Texas 75038
Telephone: (214) 237-9001
Facsimile: (214) 237-9002

Admission *Pro Hac Vic*e to be Sought for:

ERIC D. PEARSON,
Texas Bar No. 15690472
**HEYGOOD, ORR & PEARSON**
6363 North State Highway 161
Suite 450
Irving, Texas 75038
Telephone: (214) 237-9001
Facsimile: (214) 237-9002

**Attorney for Plaintiffs**

UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF CALIFORNIA
SAN FRANCISCO DIVISION

NEDA MOHAMMADI AND
ATHENA NELSON, et al.

  Plaintiffs

vs.

AUDI AG and AUDI OF AMERICA, LLC,

  Defendants.

)
)
)
)
)
)
)
)
)
)
)
)
)

CASE NO. _____

**COMPLAINT AND JURY DEMAND**

## PRELIMINARY STATEMENT

 1. The Plaintiffs (identified below in paragraphs 10-117 infra) bring this Complaint

(the "Complaint") against Defendants Audi AG and Audi of America, LLC ("Defendants" or

"Audi") seeking damages and other relief for Audi's installation of illegal defeat devices on their

vehicles.  Audi installed these "defeat devices" to skirt governmental emissions regulations by fooling the consumers and regulators into believing that the vehicles emitted far less carbon dioxide gas ("$CO_2$") than they emit in real-world driving conditions.

2.     When Plaintiffs purchased or leased their vehicles, they did not know that the vehicles had illegal defeat devices.  Audi designed these defeat devices to clandestinely reduce carbon dioxide emissions and to increase fuel efficiency when the vehicles are being tested for emissions and fuel efficiency.  But when the vehicles are being driven on the road, they emit significantly more $CO_2$ than Audi advertised and more than is allowed by law.

3.     The vehicles containing the illegal $CO_2$ defeat devices include at least those vehicles Audi equipped with (a) a ZF 8HP55 "AL 551" transmission, including, but not limited to, the A6, A7, A8, Q5, and Q7 models and (b) a DL 501-7Q "DL 501" transmission, including, but not limited to, the Audi S4, S5, S6, S7, and S8 models (collectively the "Fraudulent Vehicles").

4.     Audi sold or leased the Fraudulent Vehicles to Plaintiffs by falsely representing that they complied with relevant emissions standards when in normal use.  And Audi concealed—and failed to inform—Plaintiffs that Audi had installed illegal emissions defeat devices on their vehicles.  Audi also falsely represented the fuel efficiency of the Fraudulent Vehicles.

5.     Plaintiffs have sustained damages due to Audi's conduct in secretly installing defeat devices on their vehicles.  If Plaintiffs had known about the defeat devices, they would not have purchased or leased the Fraudulent Vehicles at all.  Or, if Audi had disclosed the existence of the defeat devices and taken the necessary mitigation efforts to make the Fraudulent Vehicles legal to sell, Plaintiffs would have paid significantly less for them.  Plaintiffs overpaid for their

vehicles (which do not provide the performance, fuel efficiency, and cleanliness that Audi advertised) and the value of their vehicles has diminished now that the existence of the defeat devices has been uncovered.

## JURISDICTION AND VENUE

6.      Pursuant to 28 U.S.C. § 1332(d)(11), this Court has jurisdiction over this case because it is a mass action under the Class Action Fairness Act ("CAFA").  This Court has subject matter jurisdiction over this case under CAFA because:  (1) this is a civil action in which the monetary claims of more than 100 plaintiffs are proposed to be tried jointly (2) the Plaintiffs' claims involve common questions of law or fact; (3) the total amount in controversy exceeds $5 million, exclusive of interest and costs; (4) each plaintiff in this lawsuit is seeking more than $75,000, exclusive of interest and costs; and (5) there is minimal diversity because at least one of the plaintiffs is a citizen of a different state than one of the defendants.

7.      Pursuant to 28 U.S.C. § 1331, this Court has also has jurisdiction over this case because each of the Plaintiffs has asserted a claim under the Magnuson - Moss Act seeking damages in excess of $50,000 exclusive of interest and costs (15 U.S.C. §§ 2301, et seq.). Therefore, Plaintiffs' claims arise under the laws of the United States.

8.      The Court has subject matter jurisdiction over this case for the reasons discussed above (*see* discussion *supra*).  This Court also has personal jurisdiction over the Defendants because, at all relevant times, they designed, manufactured, sold, distributed, promoted and placed into the stream of commerce in California numerous Audi automobiles, including the automobiles at issue in this case.  In addition, the fraudulent statements, breaches of contract, and breaches of warranty at issue in this case occurred, in part, in this District.  In addition, the claims at issue in this this case arise, in part, from Audi's contacts with California.  The

Defendants also conduct business in California and the causes of action asserted herein arose from and are connected to purposeful acts taken by Defendants in California.  Audi's contacts with California were continuous and systematic.

9.      Venue is proper in this District because a substantial part of the events and omissions giving rise to Plaintiffs' claims occurred in this District.  Audi has conducted extensive business in this District, including, without limitation, marketing, advertising, selling, and leasing the Fraudulent Vehicles in this district.  The Plaintiffs listed in paragraphs 10-18 below reside in this district and purchased their Fraudulent Vehicles in this District.

## PARTIES

### Plaintiffs

### California Plaintiffs
**Northern District of California Plaintiffs**

10.      Neda Mohammadi is a citizen of California residing in Alameda County, California.  Ms. Mohammadi purchased a 2015 Audi Q5 from Audi of Livermore in Livermore, California.

11.      Athena Nelson is a citizen of Contra Costa County, California.  Ms. Nelson purchased a used 2012 Audi A7 from Walnut Creek Mercedes in Contra Costa county, California.

**Other California Plaintiffs**

12.      Anand Agrawal is a citizen of California residing in Ventura County, California. Mr. Agrawal purchased a new 2013 Audi A6 3.0 gasoline vehicle from Rusnak/ Westlake Audi in Thousand Oaks, Los Angeles/ Ventura County, California.

-4-

13.     Joleen Hensley is a citizen of California residing in Santa Clara County, California.  Ms. Hensley purchased a new 2013 Audi A6 3.0 gasoline vehicle from Stevens Creek Audi in San Jose, Santa Clara County, California.

14.     Tammy Wellendorf is a citizen of California residing in Placer County, California.  Ms. Wellendorf purchased a used 2014 Audi Q5 3.0 gasoline vehicle from Palm Acres Auto Sales in Fair Oaks, Sacramento County, California.

15.     Ralph Figueiredo is a citizen of California residing in Los Angeles County, California.  Mr. Figueiredo purchased a used 2013 Audi A6 3.0 gasoline vehicle from Crevier BMW in Santa Ana, Orange County, California.

16.     Gene Gallonio is a citizen of California residing in Orange County, California. Mr. Gallonio purchased a new 2014 Audi A6 3.0 gasoline vehicle from Audi in Newport Beach, Orange County, California.

17.     Graham Shelton is a citizen of California residing in San Bernardino County, California.  Mr. Shelton purchased a used 2013 Audi S4 3.0 gasoline vehicle from Tom Bell Chevrolet in Redlands, San Bernardino County, California.

18.     Joel Kuznetsky is a citizen of California residing in Los Angeles County, California.  Mr. Kuznetsky purchased a new 2015 Audi S5 3.0 gasoline vehicle from Keys Audi in Van Nuys, Los Angeles County, California.

19.     Paul Luginbuhl is a citizen of California residing in Garfield County, California. Mr. Luginbuhl purchased a used 2013 Audi Q5 3.0 gasoline vehicle from a private seller in Beverly Hills, Los Angeles County, California.

**Ohio Plaintiffs**

20.     Donald DeChellis is a citizen of Ohio residing in Mahoning County, Ohio.  Mr. DeChellis purchased a new 2013 Audi Q7 3.0 gasoline vehicle from Cascade Audi in Cuyahoga Falls, Summit County, Ohio.

21.     Kraig Solak is a citizen of Ohio residing in Cuyahoga County, Ohio.  Mr. Solak purchased a used 2013 Audi A6 3.0 gasoline vehicle from Audi Willoughby in Willoughby, Lake County, Ohio.

22.     Dan Sutherin is a citizen of Ohio residing in Cuyahoga County, Ohio.  Mr. Sutherin purchased a new 2014 Audi Q5 3.0 gasoline vehicle and a new 2015 Audi SQ5 gasoline vehicle from Audi of Bedford in Bedford, Cuyahoga County, Ohio.

23.     Michael Weisend is a citizen of Ohio residing in Greene County, Ohio.  Mr. Weisend purchased a used 2013 Audi S5 Jeff Schmitt Chevrolet in Fairborn, Greene County, Ohio.

24.     Joshua Petrusko is a citizen of Ohio residing in Mahoning County, Ohio.  Mr. Petrusko purchased a used 2012 Audi A7 3.0 gasoline vehicle from Audi of Mentor in Mentor, Lake County, Ohio.

**Oklahoma Plaintiffs**

25.     Cody Dickinson is a citizen of Oklahoma residing in Tulsa County, Oklahoma. Mr. Dickinson purchased a used 2013 Audi Q5 3.0 gasoline vehicle from Blazer Motors in Oklahoma City, Oklahoma City, Oklahoma.

26.     Jimmy and Khristy Large are citizens of Alabama residing in Tuscaloosa County, Alabama.  Mr. and Mrs. Large purchased a used 2013 Audi Q7 3.0 gasoline vehicle from Lexus of Oklahoma City in Oklahoma City, Oklahoma County, Oklahoma.

27.     Donnie Nabors is a citizen of Oklahoma residing in Tulsa County, Oklahoma. Mr. Nabors leased a new 2015 Audi A8L 4.0 gasoline vehicle from Audi of Tulsa in Tulsa, Tulsa County, Oklahoma.

28.     Todd Graves is a citizen of Oklahoma residing in Oklahoma County, Oklahoma. Mr. Graves purchased a used 2015 Audi A8 4.0 gasoline vehicle from Bob Moore Audi in Oklahoma City, Oklahoma County, Oklahoma.

## Pennsylvania Plaintiffs

29.     Gary Charnis is a citizen of Pennsylvania residing in Bucks County, Pennsylvania.  Mr. Charnis purchased a used 2014 Audi S7 at Audi Devon in Devon, Chester County, Pennsylvania.

30.     Micah Jones is a citizen of Pennsylvania residing in Franklin County, Pennsylvania.  Mr. Jones purchased a new 2016 Audi S4 from Audi of Mechanicsburg in Mechanicsburg, Cumberland County, Pennsylvania.

31.     John Kearins is a citizen of Pennsylvania residing in Bucks County, Pennsylvania. Mr. Kearins purchased a new 2016 Audi Q5 3.0 gasoline vehicle from Thompson Autosport in Doylestown, Bucks County, Pennsylvania.

32.     McKenzie Kupchik is a citizen of Pennsylvania residing in Lackawanna County, Pennsylvania.  Ms. Kupchik purchased a used Audi Q7 3.0 gasoline vehicle from Wyoming Valley Motors in Larksville, Luzerne County, Pennsylvania.

33.     Alan Papinsick is a citizen of Pennsylvania residing in Luzerne County, Pennsylvania.  Mr. Papinsick purchased a used 2015 Audi Q5 3.0 gasoline vehicle from Audi Roading in Leesport, Berks County, Pennsylvania.

34.     Jeffrey Penneys is a citizen of Pennsylvania residing in Philadelphia County, Pennsylvania.  Mr. Penneys leased a new 2015 Audi Q7 3.0 gasoline vehicle from Audi Willow Grove in Willow Grove, Montgomery County, Pennsylvania.

35.     Michael Schurr is a citizen of Pennsylvania residing in Montgomery County, Pennsylvania.  Mr. Schurr purchased three (3) new 2013 Audi S4s from Conshohocken Audi in Conshohocken, Montgomery County, Pennsylvania.

36.     Richard Weiss and Jill Weiss are citizens of Pennsylvania residing in Bucks County, Pennsylvania.  Mr. and Mrs. Weiss purchased a new 2015 Audi Q7 3.0 gasoline vehicle from Audi Willow Grove in Willow Grove, Montgomery County, Pennsylvania.

37.     Scott Wetherby is a citizen of Pennsylvania residing in Monroe County, Pennsylvania.  Mr. Wetherby purchased a new 2014 Audi A6 3.0 gasoline vehicle from Knopf Auto in Allentown, Lehigh County, Pennsylvania.

38.      Brenten Lavelle is a citizen of Pennsylvania residing in Schuylkill County, Pennsylvania.  Mr. Lavelle purchased a used 2014 Audi Q7 3.0 gasoline vehicle from Sun Motor Audi in Mechanicsburg, Cumberland County, Pennsylvania.

39.     Anthony Brooks is a citizen of Pennsylvania residing in Philadelphia County, Pennsylvania.  Mr. Brooks purchased a new 2016 Audi A6 3.0 gasoline vehicle from Audi in Willow Grove, Montgomery County, Pennsylvania.

40.     Michael Anness is a citizen of Pennsylvania residing in Allegheny County, Pennsylvania.  Mr. Anness purchased a new 2013 Audi Q5 3.0 gasoline vehicle from Sewickley Audi in Sewickley, Allegheny County, Pennsylvania.

41.     John Nigro is a citizen of Pennsylvania residing in Cumberland County, Pennsylvania.  Mr. Nigro purchased a new 2016 Audi Q5 3.0 gasoline vehicle from Sun Motor Audi in Mechanicsburg, Cumberland County, Pennsylvania.

42.     Sara Allen is a citizen of Michigan residing in Wayne County, Michigan.  Ms. Allen purchased a new 2014 Audi Q7 3.0 gasoline vehicle from South Hills Audi in Washington, Washington County, Pennsylvania.

### Rhode Island Plaintiffs

43.     Joseph Del Sesto is a citizen of Rhode Island residing in Providence County, Rhode Island.  Mr. Del Sesto purchased a new 2016 Audi A6 3.0 gasoline vehicle from Audi Warwick in Warwick, Kent County, Rhode Island.

44.     Plaintiff Robert Loiselle is a citizen of Rhode Island residing in Providence County, Rhode Island.  Mr. Loisell's company is Plaintiff Maurice R. Loiselle Agency, Inc., a corporation organized and existing under the laws of Rhode Island with a principal place of business in Pawtucket Rhode Island.   Maurice R. Loiselle Agency, Inc. leased a new 2014 Audi A8 3.0 gasoline vehicle from Audi of Warwick in Warwick, Kent County, Rhode Island.

45.     Dennis Martin is a citizen of Rhode Island residing in Washington County, Rhode Island.  Mr. Martin purchased a new 2016 Audi A6 3.0 gasoline vehicle from Audi Warwick in Warwick, Kent County, Rhode Island.

### South Carolina Plaintiffs

46.     Barry R. Harvey is a citizen of South Carolina residing in Charleston County, South Carolina.  Mr. Harvey leased a new Audi Q7 3.0 gasoline vehicle from McDaniels Audi in Charleston, Berkeley County, South Carolina.  He later purchased the vehicle Mr. Harvey's wife, Carole Harvey, was a co-lessee and is now a co-owner of the vehicle.

47.     Niesha Lowery is a citizen of Georgia residing in Liberty County, Georgia.  Ms. Lowery purchased a used 2013 Audi S4 3.0 gasoline vehicle from Hilton Head VW Audi in Hardeeville, Jasper County, South Carolina.

48.     David Yim is a citizen of South Carolina residing in Charleston County, South Carolina.  Mr. Yim leased a new 2016 Audi Q5 3.0 gasoline vehicle from Audi Greenville in Greenville, Greenville County, South Carolina.

**South Dakota Plaintiffs**

49.     Travis Pierson is a citizen of Minnesota residing in Murray County, Minnesota. Mr. Pierson purchased a new 2012 Audi S5 from Graham Automotive in Sioux Falls, Minnehaha County, South Dakota.

**Tennessee Plaintiffs**

50.     Vincent Batson is a citizen of Tennessee residing in Davidson County, Tennessee. Mr. Batson purchased a used 2012 Audi A6 3.0 gasoline vehicle from Motor Cars of Nashville, in Mount Juliet, Wilson County, Tennessee.

51.     Timothy Kuhlman is a citizen of Tennessee residing in Shelby County, Tennessee.  Mr. Kuhlman purchased a new 2016 Audi Q5 3.0 gasoline vehicle from Gossett Audi in Memphis, Shelby County, Tennessee.

52.     Robert Mitchell is a citizen of Virginia residing in Washington County, Virginia. Mr. Mitchell purchased a new 2013 Audi S4 3.0 gasoline vehicle from Harper Audi in Knoxville, Knox County, Tennessee.

53.     Michael Rogers is a citizen of Tennessee residing in Davidson County, Tennessee.  Mr. Rogers leased a new 2014 Audi A8 3.0 gasoline vehicle from Sal Nashville Motors, LLC in Nashville, Davidson County, Tennessee.

54.     Jim Vaughn is a citizen of Tennessee residing in Hamilton County, Tennessee. Mr. Vaughn leased or purchased a 2015 Audi A6 3.0 gasoline vehicle from Village VW of Chattanooga in Chattanooga, Hamilton County, Tennessee.

55.     Michael Creath is a citizen of Tennessee residing in Davidson County, Tennessee. Mr. Creath purchased a new 2015 Audi S4 3.0 gasoline vehicle from Audi in Nashville, Davidson County, Tennessee.

56.     Iouda Enapay is a citizen of Texas residing in Harris County, Texas.  Mr. Enapay purchased a new 2013 Audi A6 3.0 gasoline vehicle from Audi in Nashville, Davidson County, Tennessee.

**Texas Plaintiffs**

57.     Rey Astraquillo is a citizen of Texas residing in Harris County, Texas. Mr. Astraquillo leased a new 2014 Audi S4 3.0 gasoline vehicle from Momentum Audi/Audi Central Houston in Houston, Harris County, Texas.

58.     Kimberly Balezentis is a citizen of Texas residing in Travis County, Texas.  Ms. Balezentis purchased a used 2013 Audi Q5 3.0 gasoline vehicle from a private individual in Fort Worth, Tarrant County, Texas.

59.     Craig Christopher is a citizen of Texas residing in Tarrant County, Texas.  Mr. Christopher leased a new 2016 Audi Q5 3.0 gasoline vehicle from Audi Fort Worth in Fort Worth, Tarrant County, Texas and a 2015 Audi Q5 3.0 gasoline vehicle from an individual.

60.     Anastasia Davis is a citizen of Texas residing in Fort Bend County, Texas.  Ms. Davis purchased a new 2014 Audi Q7 3.0 gasoline vehicle from Audi West in Houston, Harris County, Texas.

61.     Gregory Glass is a citizen of Texas residing in Tarrant County, Texas.  Mr. Glass purchased a used 2012 Audi Q7 3.0 gasoline vehicle from Carmax in Fort Worth, Tarrant County, Texas.

62.     Hanagavadi Halaswamy and Rathna Halaswamy are citizens of Texas residing in Harris County, Texas.  They purchased a 2017 Audi Q73.0 gasoline vehicle and a 2016 Audi Q5 3.0 gasoline vehicle from West Houston Audi in Houston, Harris County, Texas.

63.     Marsha Howze is a citizen of Texas residing in Dallas County, Texas.  Ms. Howze purchased a used 2015 Audi Q7 3.0 gasoline vehicle from Volvo of Dallas in Plano, Collin County, Texas.

64.     Humberto Johnson, Jr. is a citizen of Texas residing in Dallas County, Texas.  Mr. Johnson purchased a used 2013 Audi A8 3.0 gasoline vehicle from Audi of Fort Worth in Fort Worth, Tarrant County, Texas.

65.     Mahmood Mahdavi is a citizen of Texas residing in residing in Montgomery County, Texas.  Mr. Mahdavi purchased a used 2014 Audi Q7 3.0 gasoline vehicle.

66.     Amman Patidar is a citizen of Texas residing in Harris County, Texas.  Mr. Patidar purchased a new or used 2013 Audi A6 3.0 gasoline vehicle from Audi North Houston in Houston, Harris County, Texas.

67.     Marcus Pitre is a citizen of Texas residing in Harris County, Texas. Mr. Pitre purchased a used 2012 Audi A6 3.0 gasoline vehicle from Audi North Houston in Houston, Harris County, Texas.

68.     Clint Smith is a citizen of Texas residing in Denton County, Texas.  Mr. Smith purchased a used 2013 Audi S4 3.0 gasoline vehicle from Audi of Dallas in Dallas, Dallas County, Texas.

69.     Yvonne Trahan is a citizen of Texas residing in Jefferson County, Texas. Ms. Trahan purchased a used 2014 Audi Q7 3.0 gasoline vehicle from Phil Pott Ford in Beaumont, Jefferson County, Texas.

70.     David Walts is a citizen of Texas residing in Bexar County, Texas.  Mr. Walts leased a new 2015 Audi A8 4.0 gasoline vehicle from Cavender Audi in San Antonio, Bexar County, Texas.

71.     Peggy Whaley is a citizen of Oklahoma residing in Grady County, Oklahoma. Ms. Whaley purchased a used 2012 Audi Q5 3.0 gasoline vehicle from Delta Auto Group in Farmers Branch, Dallas County, Texas.

72.     Joel Wintheiser is a citizen of Texas residing in Bexar County, Texas.  Mr. Wintheiser purchased a used 2013 Audi A8 3.0 gasoline vehicle from Cavender Audi in San Antonio, Bexar County, Texas.

73.     Pamela Harrington is a citizen of Texas residing in Harris County, Texas.  Ms. Harrington purchased a used 2013 Audi A6 3.0 gasoline vehicle from Lonestar Chevrolet in Houston, Harris County, Texas.

74.     Rajesh Subramania is a citizen of Texas residing in Smith County, Texas.  Mr. Subramania purchased a new 2016 Audi Q5 3.0 gasoline vehicle from Audi West in Houston, Harris County, Texas.

75.     Gloria Butts is a citizen of Texas residing in Smith County, Texas.  Ms. Butts purchased a new 2014 Audi S4 3.0 gasoline vehicle from Audi in Dallas, Dallas County, Texas.

76.     Roberto Garcia is a citizen of Texas residing in Collin County, Texas.  Mr. Garcia purchased a new 2013 Audi A6 3.0 gasoline vehicle from Audi in Plano, Collin County, Texas.

77.     James Ripple is a citizen of Texas residing in Harris County, Texas.  Mr. Ripple purchased a new 2017 Q7 3.0 gasoline vehicle from Audi NW Houston, Harris County, Texas.

78.     Kiran Patel is a citizen of Texas residing in Harris County, Texas.  Mr. Patel purchased a new 2015 Audi S8 3.0 gasoline vehicle from Audi Central in Houston, Harris County, Texas.

79.     Richard Ayala is a citizen of Texas residing in Harris County, Texas.  Mr. Ayala purchased a new 2015 Audi A6 3.0 gasoline vehicle from Audi North in Houston, Harris County, Texas.

80.     Erika Akhtar is a citizen of Texas residing in Harris County, Texas.  Ms. Akhtar purchased a new 2017 Audi Q7 3.0 gasoline vehicle from Audi North in Houston, Harris County, Texas.

81.     Craig Hausz is a citizen of Texas residing in Dallas County, Texas.  Mr. Hausz purchased a new 2015 Audi A8 3.0 gasoline vehicle from Audi in Plano, Collin County, Texas.

82.     Wayne Gonzales is a citizen of Texas residing in Bexar County, Texas.  Mr. Gonzales purchased a used 2013 Audi A7 3.0 gasoline vehicle from Cavender Audi in Bexar, Bexar County, Texas.

83.     Eddie Duenkel is a citizen of Texas residing in Gray County, Texas.  Mr. Duenkel purchased a new 2012 Audi A6 3.0 gasoline vehicle from Roger Beasley in Austin, Travis County, Texas.

84.     Doris Waller is a citizen of Texas residing in Collin County, Texas.  Mr. Waller purchased a new 2016 Audi A6 3.0 gasoline vehicle from Audi in Plano, Collin County, Texas.

85.     Shannon Craft is a citizen of Texas residing in Dallas County, Texas.  Ms. Craft purchased a new 2015 Audi Q5 3.0 gasoline vehicle from Audi in Plano, Collin County, Texas.

86.     Cecilia Francillette is a citizen of Texas residing in Bexar County, Texas.  Ms. Francillette purchased a used 2017 Audi Q7 and a new 2016 Audi A6 3.0 gasoline vehicles from Cavender Audi in San Antonio, Bexar County, Texas.

87.     Cyndi Reynolds is a citizen of Texas residing in Dallas County, Texas.  Ms. Reynolds purchased a used 2013 Audi Q5 3.0 gasoline vehicle from Audi in Dallas, Dallas County, Texas.

88.     Michael Leal is a citizen of Texas residing in Cameron County, Texas.  Mr. Leal purchased a new 2013 Audi Q5 3.0 gasoline vehicle from Audi in San Juan, Hidalgo County, Texas.

89.     Kevin Combs is a citizen of Texas residing in Prince George's County, Texas. Mr. Combs purchased a used 2013 Audi S6 4.0 gasoline vehicle from Commerce Chevrolet Buick from Commerce, Hidalgo County, Texas.

**Utah Plaintiffs**

90.     Stewart Bates is a citizen of Utah residing in Salt Lake County, Utah.  Mr. Bates leased a new 2013 Audi S5 from Strong Audi in Salt Lake City, Salt Lake County, Utah and purchased the vehicle at the end of the lease.

91.     Candice Kunz is a citizen of Utah residing in Weber County, Utah.  Ms. Kunz purchased a new 2015 Audi Q7 3.0 gasoline vehicle from Audi Lehi in Lehi, Utah County, Utah.

92.     Lonna Lundquist-Smith is a citizen of Wyoming residing in Sublette County, Wyoming.  Ms. Lundquist-Smith purchased a new 2013 Q7 3.0 gasoline vehicle from Strong Audi in Salt Lake City, Salt Lake County, Utah.

93.     Jaimes Lewis is a citizen of Utah residing in Utah County, Utah.  Mr. Lewis purchased a new 2014 Audi S5 3.0 gasoline vehicle from Ken Garff Audi in Orem, Utah County, Utah.

94.     Brett Alvey is a citizen of Utah residing in Salt Lake City County, Utah.  Mr. Alvey purchased a used 2012 Audi A6 3.0 gasoline vehicle from Strong Audi in Salt Lake City, Salt Lake City County, Utah.

95.     Neil Bernstein is a citizen of Texas residing in Tarrant County, Texas.   Mr. Bernstein purchased a new 2014 Audi A7 3.0 gasoline vehicle from Strong Audi in Salt Lake City, Salt Lake City County, Utah.

## Virginia Plaintiffs

96.     Karl Bremercha is a citizen of Virginia residing in Virginia Beach City County, Virginia.  Mr. Bremer purchased a used 2012 Audi S4 from Checkered Flag Porshe Audi Jaguar in Virginia Beach, Virginia Beach County, Virginia.

97.     Gregory Fornino is a citizen of Virginia residing in Loundoun County, Virginia. Mr. Fornino purchased a new 2013 Audi S6 gasoline vehicle from Audi of Chantilly in Chantilly, Fairfax County, Virginia.

98.     Jennifer Morrison is a citizen of Virginia residing in Virginia Beach City County, Virginia.  Ms. Morrison purchased a new 2014 Audi Q7 3.0 gasoline vehicle from Checkered Flag Audi in Virginia Beach, Virginia Beach County, Virginia.

99.      Chris Taylor is a citizen of Virginia residing in Spotsylvania County, Virginia. Mr. Taylor purchased a new 2014 Audi S4 from Audi Tysons Corner in Vienna, Fairfax County, Virginia.

100.     Robert Im is a citizen of Virginia residing in Fairfax County, Virginia.  Mr. Im purchased a new 2014 Audi S6 4.0 gasoline vehicle from Tyson's Corner Audi in Vienna, Fairfax County, Virginia.

101.     John James is a citizen of Virginia residing in Fairfax County, Virginia.  Mr. James purchased a new 2016 Audi S5 3.0 gasoline vehicle from Audi in Arlington, Arlington County, Virginia.

102.     Christopher Truong is a citizen of Virginia residing in Norfolk County, Virginia. Mr. Truong purchased a used 2012 Audi A8 4.0 gasoline vehicle from Audi in Virginia Beach, Virginia Beach City County, Virginia.

103.     Barry Kessel is a citizen of Virginia residing in Fairfax County, Virginia.  Mr. Kessel purchased a new 2012 Audi Q5 3.0 gasoline vehicle from Audi in Arlington, Arlington County, Virginia.

104.     Surenderjit "Sunny" Batra is a citizen of Virginia in Fairfax County, Virginia. Mr. Batra purchased a new 2012 Audi Q5 3.0 gasoline vehicle from Audi in Arlington, Arlington County, Virginia.

105.     Christopher Bailey is a citizen of Virginia in Norfolk County, Virginia.  Mr. Bailey purchased a used 2012 Audi Q7 3.0 gasoline vehicle from Checkered Flag Porsche/ Audi in Virginia Beach, Virginia Beach City County, Virginia.

106.     Corey Taylor is a citizen of North Carolina residing in Alamance County, North Carolina.  Mr. Taylor purchased a used 2012 Audi A8 4.0 gasoline vehicle from a private seller in Arlington, Arlington County, Virginia.

**Vermont Plaintiffs**

107.    Jeff Cota is a citizen of Vermont residing in Orleans County, Vermont.  Mr. Cota purchased a used 2012 Audi S5 3.0 gasoline vehicle from Autohaus in South Burlington, Chittenden County, Vermont.

**Washington Plaintiffs**

108.    Anna Berenshtein is a citizen of Washington residing in Snohomish County, Washington.  Ms. Berenshtein purchased a new 2016 Audi Q5 3.0 gasoline vehicle from Audi Tacoma in Tacoma, Pierce County, Washington.  Ms. Berenshtein's spouse, Uri Berenshtein, is a co-owner of the vehicle.

109.    Ben Currin is a citizen of Oregon residing in Umatilla County, Oregon.  Mr. Currin purchased a new 2015 Audi Q5 3.0 gasoline vehicle from Overtuff Audi/Kia in Kennewick, Benton County, Washington.

110.    Brian Starr is a citizen of Washington residing in Spokane County, Washington. Mr. Starr purchased a used 2012 Audi Q7 3.0 gasoline vehicle from Bill Robertson Nissan, in Pasco, Franklin County, Washington.

111.    Richard Olson is a citizen of Washington residing in Snohomish County, Washington.  Mr. Olson purchased a new 2014 Audi Q7 3.0 gasoline vehicle from Barrier Auid in Bellevue, King County, Washington.

112.    Jared Salas is a citizen of California residing in Riverside County, California.  Mr. Salas purchased a used 2013 Audi S8 4.0 gasoline vehicle from Lamborghini Bentley in Bellevue, King County, Washington.

**West Virginia Plaintiffs**

113.     Richard Buterbaugh is a citizen of West Virginia residing in Monongalia County, West Virginia.  Mr. Buterbaugh purchased a used 2012 Audi A7 3.0 gasoline vehicle from Audi VW in Clarksburg, Harrison County, West Virginia.

114.     Susan Hambric is a citizen of West Virginia residing in Raleigh County, West Virginia.  Ms. Hambric purchased a new 2012 Audi A6 3.0 gasoline vehicle from Star Motors in Clarksburg, Harrison County, West Virginia.

**Wisconsin Plaintiffs**

115.     Roman Berezovski is a citizen of Wisconsin residing in Ozaukee County, Wisconsin.  Mr. Berezovski leased a new 2015 Audi Q7 3.0 gasoline vehicle from Audi Northshore in Milwaukee, Wisconsin.

116.     Shane Davis is a citizen of Wisconsin residing in Waukesha County, Wisconsin.  Mr. Davis purchased a used 2014 Audi RS7 4.0 gasoline vehicle from International Auto Milwaukee Audi in Milwaukee, Wisconsin.

117.     Ken Szafranski is a citizen of Wisconsin residing in Ozaukee County, Wisconsin.  Mr. Szafranski purchased a new 2012 Audi A6 3.0 gasoline vehicle from Audi North Shore in Brown Deer, Milwaukee County, Wisconsin.

118.     Under Federal Rule of Civil Procedure 20, Joinder of the Plaintiffs' claims in this suit is proper because their claims arise out of the same transaction, occurrence, or series of transactions or occurrences and there are questions of law and fact common to all of them will arise in the action

**Defendants**

119.     Defendant Audi of America, LLC ("Audi America") is a Delaware limited liability company with its principal place of business located at 2200 Ferdinand Porsche Drive, Herndon, Virginia 20171.  Audi America is a citizen of Delaware and Virginia. See 28 U.S.C. § 1332(d)(10).  Audi America is a wholly owned United States subsidiary of Audi AG, and it engages in business, including the advertising, marketing, and sale of Audi automobiles, in all 50 states.

120.     Defendant Audi AG ("Audi AG") is a German corporation with its principal place of business in Ingolstadt, Germany. Audi AG is the parent of Audi of America, LLC and a subsidiary of the Audi Group, which is a wholly owned subsidiary of Volkswagen AG. Audi AG directly controls and directs the actions of Audi of America, LLC. Audi AG designs, develops, manufacturers, and sells luxury automobiles.  According to Audi AG, the Audi Group sold more than 200,000 vehicles in the United States in 2015.

**FACTUAL BACKGROUND**

121.     Audi and its parent company, Volkswagen AG, have a long and sordid history of using defeat devices to falsify emissions test results.  In September 2015,the Environmental Protection Agency ("EPA") and the California Air Resources Board ("CARB") issued notices of violation accusing Volkswagen and Audi of equipping their diesel vehicles with illegal defeat devices to fake passing emissions results on their "Clean Diesel" vehicles. Those defeat devices allowed Volkswagen and Audi's diesel vehicles to detect government testing conditions and limit nitrous oxide ("NOx") while being tested.  But, during normal driving conditions, the diesel engines emitted NOx well above the legal limits.  Volkswagen and Audi were forced to admit the existence of these defeat devices.  This led to litigation and a multi-billion dollar

settlement—one of the largest in U.S. history.  Volkswagen and Audi's conduct also led to criminal prosecutions.  Volkswagen AG pled guild to three criminal felonies and paid a $2.8 billion criminal penalty (on top of substantial civil penalties).

122.    Unfortunately, Audi's use of illegal defeat devices was not limited to diesel vehicles.  In July 2016, CARB discovered that Audi had also secretly installed defeat devices on some of its gasoline vehicles to limit $CO_2$ during emissions testing.   Just like the defeat devices used to falsify NOx emissions on its diesel vehicles, Audi used defeat devices in the Fraudulent Vehicles' to evade U.S. emissions standards.

123.    Audi installed defeat devices in vehicles equipped with one of two automatic transmissions with the internal designations AL 551 and DL 501 through May 2016.  The AL 551 transmission is an eight-speed transmission that Audi sourced from transmission supplier ZF Friedrichshafen (a/k/a ZF).  Audi obtained The DL 501 transmission from Volkswagen. Audi A6, A7, A8, Q5, Q7, S4, S5, S6, S7, and S8 gasoline models are equipped with the AL 551 and DL 501 transmissions that contain the defeat devices at issue in this lawsuit.

124.    Volkswagen and Audi knew that emissions and fuel consumption are critical factors that consumers use to decide what cars to purchase.  Audi told consumers that its vehicles used less fuel and emitted less $CO_2$ than the cars actually do in normal driving conditions.

125.    Audi hid its deception by programming its engines with different modes.  One of these modes—which Audi deceptively called the "warm-up" mode—used significantly less fuel and emitted much less $CO_2$, but also delivered significantly less power.  The "warm up" mode activates when the Fraudulent Vehicles are started.  While the "warm-up" function is on, the automatic transmission remains in a "switching program" that reduces the engine speed, consumes less fuel, and produces less $CO_2$.

126.     Audi's use of the "warm up" mode was not limited to start up.  Audi also used this mode to falsify emissions test results. Audi engineers determined that the only time the Fraudulent Vehicles would run continuously with no steering wheel input was during examination in a lab, on a test bed. The vehicles' transmission control modules ("TCM") therefore set "shift points" that allow the vehicles to detect those lab conditions and to produce compliant emission results under those conditions (known by Volkswagen as the "dyno calibration" mode).[1]   Under these static dynamometer lab conditions (a vehicle treadmill), the defeat devices enable the Fraudulent Vehicles to operate in this low power mode.  This low power mode is also known as the "low $CO_2$" program.  It works by causing the Fraudulent Vehicles to shift gears early to artificially lower engine revs and emissions.

127.     During normal driving conditions, the transmission computer switches to "road calibration" mode.  In contrast to "low $CO_2$" mode, the "road calibration" mode  gives full power to the driver, resulting in increased fuel consumption and greater $CO_2$ emissions.  The road calibration mode switches on when the driver turns the steering wheel 15 degrees.  That usually happens seconds after a car is started in normal driving conditions.

128.     Audi used the defeat devices to deceive governmental authorities and consumers about the Fraudulent Vehicles' true fuel consumption and $CO_2$ emissions.  A vehicle's advertised fuel economy (listed on its "Monroney Sticker") is determined by driving a vehicle over five standardized driving patterns (or drive cycles).  These driving patterns are tested in a laboratory on a dynamometer where the conditions for all tests can be controlled.  These driving cycles

---

[1] The defeat device software is part of the TCM.  The TCM is designed to establish shift logic by reacting to signals from sensors monitoring coolant temperature, exhaust  temperature, ignition timing, crankshaft and camshaft positioning, fuel mixture and air flow volumes. The TCM and engine control unit ("ECU") work together to implement the cheating  function. Audi engineers intentionally put the cheat software in the TCM unit to make the defeat device more difficult to detect.

include cold starts, hot starts, highway driving, aggressive high-speed driving, and driving with the air conditioner in use.  The defeat device software is located in the TCM.  The engineers imbedded the cheat software in the TCM unit, to make it difficult to detect.

129.    The TCM is designed to establish shift logic by responding to signals from sensors monitoring coolant temperature, exhaust temperature, ignition timing, crankshaft and camshaft positioning, fuel mixture and air flow volumes. The TCM and engine control unit ("ECU") work together to cheat on emissions tests. Data from the five drive cycles are combined and adjusted for "real world" conditions in a way to represent "City" driving and "Highway" driving.  The "combined" fuel economy is the average of the City and Highway values with weights of 55% and 45% respectively. These adjusted and combined values appear on the vehicle's Monroney sticker.

130.    The drive cycles are performed on a dynamometer in a lab while the Fraudulent Vehicles' "low $CO_2$" mode is activated.  During each cycle, pollutants are measured.  This includes un-combusted or partially combusted gasoline (hydrocarbons or HC), carbon monoxide (CO) and carbon dioxide ($CO_2$).  The amount of carbon produced is then converted to the amount of gasoline that was required to produce the carbon in the exhaust.  The amount of gasoline produced during the tests is divided into the distance driven on the test to produce the fuel economy.

131.    Mathematically, as the amount of $CO_2$ produced increases, a vehicle gasoline uses more gasoline and the fuel economy decreases. Therefore, if a Defective Vehicle produces less $CO_2$ during laboratory testing (while in "low $CO_2$" mode) but higher $CO_2$ when driven on the road, then the vehicle would have a higher estimated fuel economy rating on the Monroney sticker than the vehicle would actually have while being driven.

132.    This is how Audi's defeat devices worked in the Fraudulent Vehicles.  The defeat device program gives the Fraudulent Vehicles two modes. The "dyno calibration" mode lowers fuel supply and limits revolutions per minute ("rpms") per gear, which curtails fuel burn and lowers emissions.  The "low $CO_2$" or "dyno calibration" mode is activated during all of the laboratory testing used to calculate the Fraudulent Vehicles' supposed fuel economy.  On the other hand, the "road calibration" mode allows the engine to turn maximum rpms in each gear and furnishes the necessary—greatly increased—fuel supply required to deliver advertised torque and performance. The "road calibration" mode is active during all normal driving.

133.    Audi knew what it was doing.  In fact, it commissioned its own study, which found that a vehicles' fuel consumption on the road increased by 8.5 percent after the wheel was turned.  Audi executives knew how the defeat device worked, and instructed company employees to utilize it to deceive regulators and consumers.  Volkswagen and Audi management discussed the defeat device software in detail, for example, during a "Summer Drive" event in South Africa in the second half of February 2013. According to the event minutes, Axel Eiser, then the head of Audi's powertrain division (and currently the head of powertrain development of the entire Volkswagen group) asked: "When will we have the cycle optimized shift program?" He continued: "The shifting program shall be designed to be 100% active on the dyno, but only 0.01% in the hands of the customer."[2]   The meaning of Mr. Eiser's statement is crystal clear— Audi executives intentionally used the defeat device to deceive regulators and consumers by activating the "low $CO_2$" or "dyno calibration" mode in testing conditions.  This practice is highly deceptive and illegal.

---

[2] Kayhan Oezgenc and Jan C. Wehmeyer, *This is How the Manufacturer Cheated on $CO_2$*, Bild am Sonntag (November 5, 2016) http://www.bild.de/bild-plus/auto/auto-news/audi/so-schummelte-der-hersteller-bei-co-48621300.bild.html

1

## TOLLING OF THE STATUTE OF LIMITATIONS

2

### Discovery Rule Tolling

3

4

134.     Plaintiffs could not have discovered through reasonable diligence that their

5

Fraudulent Vehicles were defective within the time period of any applicable statutes of

6

limitation.  Plaintiffs did not know and could not have known until November 7, 2016, the time

7

when published reports first revealed that the Fraudulent Vehicles are equipped with defeat

8

devices.  Plaintiffs' claims did not accrue until they discovered that the defeat device caused the

9

Fraudulent Vehicles to fail required emissions standards.

10

### Fraudulent Concealment Tolling

11

12

135.     At all relevant times, Audi concealed the existence of the defeat devices from

13

Plaintiffs and failed to disclose any information to Plaintiffs about the defeat devices on the

14

Fraudulent Vehicles.  Audi deliberately hid the information that Plaintiffs needed to discover the

15

existence of the defeat devices at an early time using reasonable diligence.  Despite knowing that

16

its vehicles contained illegal defeat devices, Audi continued to manufacture, market, distribute,

17

lease, and/or sell the Fraudulent Vehicles to Plaintiffs.  This conduct amounted to concealment

18

and failure to notify Plaintiffs about any facts that would have alerted Plaintiffs to the existence

19

of the defeat devices on the Fraudulent Vehicles.

20

21

136.     Plaintiffs justifiably relied on Audi to disclose these material defects in the Audi

22

vehicles they purchased or leased, as such defects were hidden and not discoverable through

23

reasonable efforts by Plaintiffs.  All applicable statutes of limitation have been tolled and

24

suspended with respect to Plaintiffs' claims arising from the existence of the defeat devices on

25

the Fraudulent Vehicles by virtue of the fraudulent concealment doctrine.

26

27

28

**Estoppel**

137.    Audi was under a continuous duty to disclose to Plaintiffs the existence of the

defeat devices.  The existence of the defeat devices has had a substantial, negative effect on the

character, quality, performance, and nature of the Fraudulent Vehicles. Audi actively hid the true

character, quality, performance, and nature of the defeat device in the Fraudulent Vehicles, and

Plaintiffs reasonably relied upon Audi's knowing and active concealment of these facts.  Audi is

accordingly estopped from relying on any statute of limitations in defense of this action.  For

these same reasons, Audi is estopped from relying upon any warranty mileage and age

limitations in defense of this action.

## CLAIMS FOR RELIEF

## COUNTS COMMON TO ALL PLAINTIFFS

### COMMON COUNT 1
### VIOLATION OF MAGNUSON MOSS WARRANTY ACT,
### (15 U.S.C. §§ 2301, *et seq.*)
### (On Behalf of all Plaintiffs)

138.    Plaintiffs incorporate by reference all allegations in this Complaint as though fully

set forth herein.

139.    This Court has jurisdiction to decide claims brought under the Magnuson-Moss

Warranty Act (for the purpose of this Count, the "Act") by virtue of 28 U.S.C. § 1332(a)-(d).

140.    Defendants are "supplier[s]" and "warrantor[s]" within the meaning of 15 U.S.C.

§ 2301(4) and (5) because they regularly sell Audi vehicles accompanied by the written Limited

Warranties.

141.    Plaintiffs are "consumers" who purchased "consumer products" for purposes of

15 U.S.C. § 2301(1) and (3) because they purchased Fraudulent Vehicles for personal, family, or

household purposes.

142.    The Fraudulent Vehicles are "consumer products" within the meaning of the Act. 15 U.S.C. § 2301(1).

143.    The Act provides a cause of action for any consumer who is damaged by the failure of a warrantor to comply with a written or implied warranty.  15 U.S.C. § 2310(d)(1)

144.     The amount in controversy of the Plaintiffs' individual claims meets or exceeds $25.00 in value.  In addition, the amount in controversy meets or exceeds $50,000 in value (exclusive of interest and costs) on the basis of all claims to be determined in this suit.

145.    Under the Act, damaged "consumers" have a private cause of action against any warrantor that fails to comply with a written or implied warranty.

146.    Audi provided Plaintiffs with two express warranties:  (1) "bumper-to-bumper" limited express warranty coverage for a minimum of four years or 50,000 miles, whichever comes first, and which covers emission related repairs; and (2) a federal emissions warranty that covers the repair and replacement of all emission control and emission- related parts for two years or 24,000 miles (whichever comes first), and covers specified major emission control components, including catalytic converters, electronic emissions control unit or computer and on-board emissions diagnostic device or computer for 8 years or 80,000 miles (whichever comes first). These express warranties constitute written warranties within the meaning of 15 U.S.C. § 2301(6).  The Fraudulent Vehicles' implied warranties are covered by 15 U.S.C. § 2301(7).

147.    The terms of the written warranties and implied warranties became part of the basis of the bargain between Plaintiffs when deciding to purchase a Defective Vehicle.

148.   Audi breached these written and implied warranties as described in detail above. Without limitation, the Fraudulent Vehicles share a common design defect in that they emit more carbon dioxide than: (a) is allowable under the applicable regulations, and (b) Audi represented were emitted to their customers, the public, and regulators.

149.   Plaintiffs have had sufficient direct dealings with either Audi or its agents (including Audi dealerships) to establish privity of contract between Audi, on the one hand, and Plaintiffs, on the other hand. Nonetheless, privity is not required here because Plaintiffs are intended third-party beneficiaries of contracts between Audi and its dealers, and specifically, of Audi's implied warranties. The dealers were not intended to be the ultimate consumers of the Fraudulent Vehicles and have no rights under the warranty agreements provided with the Fraudulent Vehicles; the warranty agreements were designed for and intended to benefit the consumers only.

150.   Affording Audi a reasonable opportunity to cure its breach of written warranties would be unnecessary and futile here. At the time of sale or lease of each Defective Vehicle, Audi knew, should have known, or was reckless in not knowing of its misrepresentations concerning the Fraudulent Vehicles' inability to perform as warranted, but nonetheless failed to rectify the situation and/or disclose the design defect.  Under the circumstances, the remedies available under any informal settlement procedures would be inadequate and any requirement that Plaintiffs resort to an informal dispute resolution procedure and/or afford Audi a reasonable opportunity to cure its breach of warranties is excused and thereby deemed satisfied.

151.   As a direct and proximate result of Audi's breach of the written warranties and the implied warranty of merchantability, Plaintiffs have suffered damages in an amount to be determined at trial.

152.     Plaintiffs seek all damages permitted by law, including:  compensation for the monetary difference between the Fraudulent Vehicles as warranted and as sold; compensation for the reduction in resale value; the cost of purchasing, leasing, or renting replacement vehicles; other incidental and consequential damages; statutory attorney fees; and all other relief allowed by law.

**COMMON COUNT 2**
**FRAUD**
**(On Behalf of all Plaintiffs)**

153.     Plaintiffs incorporate by reference all allegations in this Complaint as though fully set forth herein.

154.     As alleged above, Defendants intentionally concealed and suppressed material facts concerning the illegality and quality of the Fraudulent Vehicles in order to defraud and mislead both regulators and Plaintiffs about the true nature of the Fraudulent Vehicles. Defendants accomplished their scheme by installing, aiding in the installation of, and/or failing to disclose the defeat devices in the Fraudulent Vehicles that caused the vehicles to operate in a low-emission test mode only during testing. During normal operation and use, the Fraudulent Vehicles emitted significantly larger quantities of carbon dioxide.  The result was precisely what Audi intended— the Fraudulent Vehicles were able to pass emission testing by way of deliberately induced false readings.  Defendants, thus, successfully imported, sold, and/or leased thousands of Fraudulent Vehicles to unwitting American consumers.

155.     Audi falsely represented that the Fraudulent Vehicles had functioning emissions systems that operated within legal limits during normal driving conditions.

156.     Audi's false representations and omissions were material to consumers, as they concerned the legality and marketing features of the Fraudulent Vehicles.

157.    Plaintiffs reasonably relied on Audi's deception, and Audi intended that they would so rely. Plaintiffs had no way of discerning that Defendants were, in fact, deceiving them because the defeat devices were sophisticated technology that could not be discerned by regulators, much less consumers.

158.    Audi's scheme to design and install defeat device software in the Fraudulent Vehicles for the specific purpose of circumventing U.S. law, and then concealing their fraudulent scheme, reveals a corporate culture that emphasized sales and profits over integrity and public health.

159.    Audi had a duty to disclose the defeat devices to regulators and the public.

160.    Audi hatched the deceptive scheme and knew that its customers, including Plaintiffs, did not know about, and could not reasonably discover, its scheme.

161.    Plaintiffs were not aware of the concealed and misrepresented material facts referenced above, and they would not have acted as they did had regulators or the driving public known the truth.

162.    As a direct and proximate result of Audi's fraudulent scheme, Plaintiffs sustained damages.  They own or lease Fraudulent Vehicles that are non-compliant and severely diminished in value as compared to the vehicles that were advertised or marketed. Moreover, the Fraudulent Vehicles either cannot be repaired to comply with applicable emissions standards, or if they can be made compliant, their performance, fuel efficiency, and longevity will be compromised.

163.    Audi is liable to Plaintiffs for damages in an amount to be proven at trial. Moreover, because Audi acted wantonly, maliciously, oppressively, recklessly, deliberately, and with intent to defraud Plaintiffs for the purpose of enriching themselves to Plaintiffs' detriment;

therefore, Audi's conduct warrants substantial punitive and exemplary damages in an amount to be determined at trial.

**COMMON COUNT 3**
**BREACH OF CONTRACT**
**(On Behalf of all Plaintiffs)**

164.    Plaintiffs incorporate by reference all allegations in this Complaint as though fully set forth herein.

165.    Every purchase or lease of a Defective Vehicle from an authorized dealer of Audi constitutes a contract between Audi and the purchaser or lessee. Audi materially breached these contracts by selling or leasing Plaintiffs defective, non-compliant Fraudulent Vehicles and by misrepresenting or failing to disclose the existence of the defeat device, rendering the Fraudulent Vehicles substantially less valuable than the vehicles that the Defendants advertised and promised to deliver to Plaintiffs.

166.    Audi's misrepresentations and omissions alleged herein caused Plaintiffs to enter into their agreements to purchase or lease their Fraudulent Vehicles. Absent those misrepresentations and omissions, Plaintiffs would not have purchased or leased their Fraudulent Vehicles and/or would not have purchased or leased their Fraudulent Vehicles at the prices they paid. Accordingly Plaintiffs overpaid for their Fraudulent Vehicles and did not receive the benefit of their bargain.

167.    Audi also breached their implied covenant of good faith and fair dealing under the laws of all 50 states and the District of Columbia.  By delivering a vehicle that contained defeat device software and thus exceeded, during normal use, federal and state emission limits, Audi violated Plaintiffs' fair and reasonable expectations under their respective contracts.  In addition,

Audi's misrepresentations and omissions violated Audi's implied duty to deal honestly, and within reasonable commercial standards of fair dealing, with Plaintiffs.

168.    As a direct and proximate result of Audi's breach, Plaintiffs have been damaged in an amount to be proven at trial, which shall include, but is not limited to, all compensatory damages, incidental and consequential damages, and other damages allowed by law.

**COMMON COUNT 4**
**UNJUST ENRICHMENT**
**(On Behalf of all Plaintiffs)**

169.    Plaintiffs incorporate by reference all allegations in this Complaint as though fully set forth herein.

170.    Audi benefitted from selling and leasing, at an unjust profit, Fraudulent Vehicles that had artificially inflated values due to Audi's concealment of the defeat devices, and Plaintiffs have overpaid for these vehicles.

171.    Audi received and retained unjust benefits from the Plaintiffs and inequity has resulted.

172.    It is inequitable and unconscionable for Audi to retain these benefits.

173.    Because Audi concealed their fraud and deception, Plaintiffs were not aware of the true facts concerning the Fraudulent Vehicles and did not benefit from Audi's misconduct.

174.    Audi knowingly accepted the unjust benefits of their fraudulent conduct.

175.    As a result of Audi's misconduct, the amount of their unjust enrichment should be disgorged and returned to Plaintiffs in an amount to be proven at trial.

**CALIFORNIA COUNTS**

**CALIFORNIA COUNT 1**
**VIOLATION OF SONG-BEVERLY CONSUMER WARRANTY ACT**
**BREACH OF IMPLIED WARRANTY**
**(Cal Civ. Code §§ 1790, et seq.)**
**(On Behalf of the California Plaintiffs)**

176.    Plaintiffs incorporate by reference all allegations in this Complaint as though fully set forth herein.

177.    Plaintiffs who purchased Fraudulent Vehicles in California are "buyers" within the meaning of Cal. Civ. Code § 1791.

178.    The Fraudulent Vehicles are "consumer goods" within the meaning of Cal. Civ. Code § 1791(a).

179.    Audi is the "manufacturer" of the Fraudulent Vehicles within the meaning of Cal. Civ. Code § 1791(j).

180.     Audi impliedly warranted to Plaintiffs that the Fraudulent Vehicles were "merchantable" within the meaning of Cal. Civ. Code §§ 1791.1(a) & 1792; however, the Fraudulent Vehicles do not have the quality that a buyer would reasonably expect.

181.    Cal. Civ. Code § 1791.1(a) states: "Implied warranty of merchantability" or "implied warranty that goods are merchantable" means that the consumer goods meet each of the following:

(1)    Pass without objection in the trade under the contract description.

(2)    Are fit for the ordinary purposes for which such goods are used.

(3)    Are adequately contained, packaged, and labeled.

(4)    Conform to the promises or affirmations of fact made on the container or label.

182.     The Fraudulent Vehicles would not pass without objection in the automotive trade because they share a common design defect in that they are equipped with "defeat devices." These defeat devices are designed to secretly limit emissions and increase fuel efficiency when the vehicles are being subject to regulatory emissions and fuel efficiency testing. However, when the Fraudulent Vehicles are in regular use on the road, they emit a substantially increased amount of noxious gasses.

183.     Fraudulent Vehicles are not adequately labeled because the labeling fails to disclose the fact that they are defective.

184.     In the various channels of information through which Audi sold Fraudulent Vehicles, Audi failed to disclose material information concerning the Fraudulent Vehicles, which it had a duty to disclose. Audi had a duty to disclose the defect because, as detailed above: (a) Audi knew about the defect; (b) Audi had exclusive knowledge of material facts not known to the general public, Plaintiffs, and (c) Audi actively concealed material facts concerning the fact that the Fraudulent Vehicles were equipped with defeat devices from the general public, Plaintiffs. As detailed above, Audi knew the information concerning the defect at the time of advertising and selling the Fraudulent Vehicles, all of which was intended to induce consumers to purchase the Fraudulent Vehicles.

185.     Audi breached the implied warranty of merchantability by manufacturing and selling Fraudulent Vehicles that are defective.  Furthermore, this defect has caused Plaintiffs to not receive the benefit of their bargain and have caused the Fraudulent Vehicles to depreciate in value.

186.     Plaintiffs have been damaged as a result of the diminished value of Audi's products.

187.    Under Cal. Civ. Code §§ 1791.1(d) & 1794, are entitled to damages and other legal and equitable relief including, at their election, the purchase price of their Fraudulent Vehicles, or the overpayment or diminution in value of their Fraudulent Vehicles.

188.    Under Cal. Civ. Code § 1794, Plaintiffs are entitled to costs and attorneys' fees.

**CALIFORNIA COUNT 2**
**VIOLATION OF THE SONG-BEVERLY CONSUMER PROTECTION ACT,**
**BREACH OF EXPRESS WARRANTY**
**Cal Civ. Code §§ 1790,** *et seq.*
**(On Behalf of the California Plaintiffs)**

189.    Plaintiffs incorporate by reference all allegations in this Complaint as though fully set forth herein.

190.    Plaintiffs who purchased or leased the Fraudulent Vehicles in California are "buyers" within the meaning of California Civil Code § 1791(b).

191.    The Fraudulent Vehicles are "consumer goods" within the meaning of California Civil Code § 1791(a).

192.    Audi is a "manufacturer" of the Fraudulent Vehicles within the meaning of California Civil Code § 1791(j).

193.    Audi made express warranties to Plaintiffs within the meaning of California Civil Code §§ 1791.2 and 1793.2, as described above.

194.    As set forth above in detail, the Fraudulent Vehicles are inherently defective in that they are equipped with "defeat devices." These defeat devices are designed to secretly limit emissions and increase fuel efficiency when the vehicles are being subject to regulatory emissions and fuel efficiency testing. However, when the Fraudulent Vehicles are in regular use on the road, they emit a substantially increased amount of noxious gasses. The installation of the

defeat device substantially impairs the use and value of the Fraudulent Vehicles to reasonable consumers.

195.     As a result of Audi's breach of their express warranties, Plaintiffs received goods whose defect substantially impairs their value to Plaintiffs.  Plaintiffs have been damaged as a result of, inter alia, the diminished value of Audi's products.

196.     Pursuant to California Civil Code §§ 1793.2 & 1794, Plaintiffs are entitled to damages and other legal and equitable relief including, at their election, the purchase price of their Fraudulent Vehicles, or the overpayment or diminution in value of their Fraudulent Vehicles.

197.     Pursuant to California Civil Code § 1794, Plaintiffs are entitled to costs and attorneys' fees.

**CALIFORNIA COUNT 3**
**VIOLATION OF CALIFORNIA CONSUMERS LEGAL REMEDIES ACT**
**Cal Bus. & Prof. Code §§ 1750, *et seq.***
**(On Behalf of the California Plaintiffs)**

198.     Plaintiffs incorporate by reference all allegations in this Complaint as though fully set forth herein.

199.     Plaintiffs were deceived by Audi's failure to disclose that the Fraudulent Vehicles share a uniform defect in that they are equipped with "defeat devices."  These defeat devices are designed to secretly limit emissions and increase fuel efficiency when the vehicles are being subject to regulatory emissions and fuel efficiency testing. However, when the Fraudulent Vehicles are in regular use on the road, they emit a substantially increased amount of noxious gasses.

200.    Audi engaged in unfair or deceptive acts or practices when, in the course of its business it, among other acts and practices, knowingly made materially incomplete representations as to the characteristics, uses and benefits of the Fraudulent Vehicles.

201.    In the various channels of information through which Audi sold Fraudulent Vehicles, Audi failed to disclose material information concerning the Fraudulent Vehicles, which it had a duty to disclose. Audi had a duty to disclose the defect because, as detailed above, (a) Audi knew about the defeat device equipped on the Fraudulent Vehicles; (b) Audi had exclusive knowledge of material facts not known to the general public, Plaintiffs, and (c) Audi actively concealed material facts concerning the defeat device from the general public, Plaintiffs. As detailed above, Audi knew the information concerning the defect at the time of advertising and selling the Fraudulent Vehicles, all of which was intended to induce consumers to purchase the Fraudulent Vehicles.

202.    Audi intended for the Plaintiffs to rely on it to provide adequately designed, and adequately manufactured automobiles and to honestly and accurately reveal the problems described throughout this Complaint.

203.    Audi intentionally failed or refused to disclose the defect to consumers.

204.    Audi's conduct and deceptive omissions were intended to induce Plaintiffs to believe that the Fraudulent Vehicles were adequately designed and adequately manufactured automobiles.

205.    Audi's conduct constitutes unfair acts or practices as defined by the California Consumers Legal Remedies Act (the "CLRA").

206.    Plaintiffs have suffered injury in fact and actual damages resulting from Audi's material omissions because they paid inflated purchase prices for the Fraudulent Vehicles.

207.    Plaintiffs seek an order enjoining Audi's unfair or deceptive acts or practices, equitable relief, an award of attorneys' fees and costs under Cal. Civ. Code § 1780(e), and any other just and proper relief available under the CLRA.

208.    In accordance with section 1782(a) of the CLRA, Plaintiffs' counsel, on behalf of Plaintiffs, will serve Audi with notice of their alleged violations of Cal. Civ. Code § 1770(a) relating to the Fraudulent Vehicles purchased by Plaintiffs, and demand that Audi corrects or agrees to correct the actions described therein within thirty (30) days of such notice.  If Audi fails to do so, Plaintiffs will amend this Complaint as of right (or otherwise seek leave to amend the Complaint) to include compensatory and monetary damages to which Plaintiffs are entitled.

209.    Audi's conduct described herein is fraudulent, wanton, and malicious.

## OHIO COUNTS

### OHIO COUNT I
### VIOLATIONS OF THE OHIO CONSUMER SALES PRACTICES ACT
### (Ohio Rev. Code §§ 1345.01, et seq.)
### (On Behalf of the Ohio Plaintiffs)

210.    Plaintiffs incorporate by reference each preceding paragraph as though fully set forth herein.

211.    Audi and Plaintiffs are "persons" within the meaning of Ohio Rev. Code § 1345.01(B). Audi is a "supplier" as defined by Ohio Rev. Code § 1345.01(C).

212.    Plaintiffs are "consumers" as that term is defined in Ohio Rev. Code § 1345.01(D), and their purchase and leases of the Fraudulent Vehicles with the Defect Devices installed in them are "consumer transactions" within the meaning of Ohio Rev. Code § 1345.01(A).

213.   Ohio Rev. Code § 1345.02, prohibits unfair or deceptive acts or practices in connection with a consumer transaction. Ohio CSPA prohibits a supplier from (i) representing that goods have characteristics, uses or benefits which the goods do not have; (ii) representing that their goods are of a particular quality or grade that the product is not; and (iii) representing that the subject of a consumer transaction has been supplied in accordance with a previous representation, if it has not.

214.   In the course of its business, Audi concealed and suppressed material facts concerning the Fraudulent Vehicles.  Defendants accomplished this by installing illegal defeat device software in the Fraudulent Vehicles that caused the vehicles to operate in a low emission test mode only during emissions testing.  During normal operations, the Fraudulent Vehicles would emit grossly larger quantities of noxious $CO_2$ gasses.  The result was what Audi intended—the Fraudulent Vehicles passed emissions testing by way of deliberately induced false readings. Plaintiffs had no way of discerning that Audi's representations were false and misleading because Audi's defeat device software was extremely sophisticated technology. Plaintiffs did not and could not unravel Audi's deception on their own.

215.   Audi thus violated the Act by, at minimum: employing deception, deceptive acts or practices, fraud, misrepresentations, or concealment, suppression or omission of any material fact with intent that others rely upon such concealment, suppression or omission, in connection with the sale of Fraudulent Vehicles.

216.   Audi intentionally and knowingly misrepresented material facts regarding the Fraudulent Vehicles with intent to mislead Plaintiffs.

217.   Audi knew or should have known that its conduct violated the Ohio CSPA.

218.    Audi owed Plaintiffs a duty to disclose illegality, public health and safety risks, the true nature of the Fraudulent Vehicles and the devaluing of safety at Audi, because Audi:

a.    possessed exclusive knowledge that they were manufacturing, selling, and distributing vehicles throughout the United States that did not comply with regulations;

b.    intentionally concealed the foregoing from regulators and Plaintiffs,; and/or

c.    made incomplete representations about the environmental cleanliness and efficiency of the Fraudulent Vehicles generally, and the use of the defeat device in particular, while purposefully withholding material facts from Plaintiffs that contradicted these representations.

219.    Audi's fraudulent use of the "defeat device" and its concealment of the true characteristics of the Fraudulent Vehicles' fuel consumption of $CO_2$ emissions were material to Plaintiffs.

220.    Audi's unfair or deceptive acts or practices were likely to and did in fact deceive regulators and reasonable consumers, including Plaintiffs.

221.    Plaintiffs suffered ascertainable loss and actual damages as a direct and proximate result of Defendants' misrepresentations and its concealment of and failure to disclose material information. Plaintiffs who purchased or leased the Fraudulent Vehicles would not have purchased or leased them at all and/or—if the Vehicles' true nature had been disclosed and mitigated, and the Vehicles rendered legal to sell—would have paid significantly less for them. Plaintiffs also suffered diminished value of their vehicles, as well as lost or diminished use.

222.    As a direct and proximate result of Defendants' violations of the Ohio CSPA,

223.    Plaintiffs have suffered injury-in-fact and/or actual damage.

224.    Plaintiffs seek actual damages and punitive damages against Audi because Audi's conduct was egregious. Audi's egregious conduct warrants punitive damages.

225.    Defendants had an ongoing duty to all Audi customers to refrain from unfair and deceptive practices under the Ohio CSPA in the course of its business.

226.    Defendants' violations present a continuing risk to Plaintiffs as well as to the general public. Defendants' unlawful acts and practices complained of herein affect the public interest.

227.    Pursuant to Ohio Rev. Code § 1345.09, Plaintiffs seek an order enjoining Audi's unfair and/or deceptive acts or practices, actual damages - trebled, and attorneys' fees, costs, and any other just and proper relief, to the extend available under the Ohio CSPA.

## OHIO COUNT 2
### VIOLATIONS OF THE OHIO DECEPTIVE TRADE PRACTICES ACT
#### (Ohio Rev. Code § 4165.01, et seq.)
#### (On Behalf of the Ohio Plaintiffs)

228.    Plaintiffs incorporate by reference each preceding paragraph as though fully set forth herein.

229.    Audi and Plaintiffs are "persons" within the meaning of Ohio Rev. Code § 4165.01(D).

230.    Audi engaged in "the course of [its] business" within the meaning of Ohio Rev. Code § 4165.02(A) with respect to the acts alleged herein.

231.    The Ohio Deceptive Trade Practices Act, Ohio Rev. Code § 4165.02(A) ("Ohio DTPA") provides that a "person engages in a deceptive trade practice when, in the course of the person's business, vocation, or occupation," the person does any of the following: "(2) Causes likelihood of confusion or misunderstanding as to the source, sponsorship, approval, or certification of goods or services; … (7) Represents that goods or services have sponsorship, approval, characteristics, ingredients, uses, benefits, or quantities that they do not have or that a person has a sponsorship, approval, status, affiliation, or connection that the person does not

have; … (9) Represents that goods or services are of a particular standard, quality, or grade, or that goods are of a particular style or model, if they are of another; … [or] (11) Advertises goods or services with intent not to sell them as advertised."

232.    In the course of its business, Audi concealed and suppressed material facts concerning the Fraudulent Vehicles.  Defendants accomplished this by installing illegal defeat device software in the Fraudulent Vehicles that caused the vehicles to operate in a low emission test mode only during emissions testing.  During normal operations, the Fraudulent Vehicles would emit grossly larger quantities of noxious $CO_2$ gasses.  The result was what Audi intended—the Fraudulent Vehicles passed emissions testing by way of deliberately induced false readings. Plaintiffs had no way of discerning that Audi's representations were false and misleading because Audi's defeat device software was extremely sophisticated technology. Plaintiffs did not and could not unravel Audi's deception on their own.

233.    Audi thus violated the Act by, at minimum: employing deception, deceptive acts or practices, fraud, misrepresentations, or concealment, suppression or omission of any material fact with intent that others rely upon such concealment, suppression or omission, in connection with the sale of Fraudulent Vehicles.

234.    Audi intentionally and knowingly misrepresented material facts regarding the Fraudulent Vehicles with intent to mislead Plaintiffs.

235.    Audi knew or should have known that its conduct violated the Ohio DTPA.

236.    Audi owed Plaintiffs a duty to disclose illegality, public health and safety risks, the true nature of the Fraudulent Vehicles and the devaluing of safety at Audi, because Audi:

    a.  possessed exclusive knowledge that they were manufacturing, selling, and distributing vehicles throughout the United States that did not comply with regulations;

b.   intentionally concealed the foregoing from regulators and Plaintiffs,; and/or

c.   made incomplete representations about the environmental cleanliness and efficiency of the Fraudulent Vehicles generally, and the use of the defeat device in particular, while purposefully withholding material facts from Plaintiffs that contradicted these representations.

237.   Audi's fraudulent use of the "defeat device" and its concealment of the true characteristics of the Fraudulent Vehicles' fuel consumption of $CO_2$ emissions were material to Plaintiffs.

238.   Audi's unfair or deceptive acts or practices were likely to and did in fact deceive regulators and reasonable consumers, including Plaintiffs.

239.   Plaintiffs suffered ascertainable loss and actual damages as a direct and proximate result of Defendants' misrepresentations and its concealment of and failure to disclose material information. Plaintiffs who purchased or leased the Fraudulent Vehicles would not have purchased or leased them at all and/or—if the Vehicles' true nature had been disclosed and mitigated, and the Vehicles rendered legal to sell—would have paid significantly less for them. Plaintiffs also suffered diminished value of their vehicles, as well as lost or diminished use.

240.   As a direct and proximate result of Defendants' violations of the Ohio DTPA,

241.   Plaintiffs have suffered injury-in-fact and/or actual damage.

242.   Defendants had an ongoing duty to all Audi customers to refrain from unfair and deceptive practices under the Ohio DTPA in the course of its business.

243.   Defendants' violations present a continuing risk to Plaintiffs as well as to the general public. Defendants' unlawful acts and practices complained of herein affect the public interest.

244.    Pursuant to Ohio Rev. Code § 4165.03, Plaintiffs seek an order enjoining Audi's unfair and/or deceptive acts or practices, damages, punitive damages, and attorneys' fees, costs, and any other just and proper relief available under the Ohio DTPA.

**OHIO COUNT 3**
**BREACH OF IMPLIED WARRANTY OF MERCHANTABILITY**
**(Ohio Rev. Code Ann. §§ 1302.27 and 1310.19)**
**(On Behalf of the Ohio Plaintiffs)**

245.    Plaintiffs re-allege and incorporate by reference all allegations of the preceding paragraphs as though fully set forth herein.

246.    The Defendants are and were at all relevant times "merchants" with respect to motor vehicles under Ohio Rev. Code §§ 1302.01(5) and 1310.01(A)(20), and "sellers" of motor vehicles under § 1302.01(4).

247.    With respect to leases, the Defendants are and were at all relevant times "lessors" of motor vehicles under Ohio Rev. Code § 1310.01(A)(20).

248.    The Fraudulent Vehicles are and were at all relevant times "goods" within the meaning of Ohio Rev. Code §§ 1302.01(8) and 1310.01(A)(8).

249.    A warranty that the Fraudulent Vehicles were in merchantable condition and fit for the ordinary purpose for which vehicles are used is implied by law pursuant to Ohio Rev. Code §§ 1302.27 and 1310.19.

250.    The Fraudulent Vehicles were not in merchantable condition and were not fit for ordinary vehicles are used because they share a common defect in that they are equipped with defeat devices.  These defeat devices are designed to secretly limit emissions and increase fuel efficiency when the vehicles are being subject to regulatory emissions and fuel efficiency testing. However, when the Fraudulent Vehicles are in regular use on the road, they emit a substantially increased amount of noxious gasses.

251.    As a direct and proximate result of Audi's breach of the implied warranty of merchantability, Plaintiffs have been damaged in an amount to be proven at trial.

**OHIO COUNT 4**
**BREACH OF EXPRESS WARRANTY**
**(Ohio Rev. Code § 1302.26, et seq.) (U.C.C. § 2-313))**
**(On Behalf of the Ohio Plaintiffs)**

252.    Plaintiffs re-allege and incorporate by reference all preceding allegations as though fully set forth herein.

253.    The Defendants are and were at all relevant times "merchants" with respect to motor vehicles under Ohio Rev. Code §§ 1302.01(5) and 1310.01(A)(20), and "sellers" of motor vehicles under § 1302.01(4).

254.    With respect to leases, the Defendants are and were at all relevant times "lessors" of motor vehicles under Ohio Rev. Code § 1310.01(A)(20).

255.    The Fraudulent Vehicles are and were at all relevant times "goods" within the meaning of Ohio Rev. Code §§ 1302.01(8), and 1310.01(A)(8).

256.    As set forth above in detail, the Fraudulent Vehicles are inherently defective in that they are equipped with "defeat devices."  These defeat devices are designed to secretly limit emissions and increase fuel efficiency when the vehicles are being subject to regulatory emissions and fuel efficiency testing. However, when the Fraudulent Vehicles are in regular use on the road, they emit a substantially increased amount of noxious gasses.  The installation of the defeat device substantially impairs the use and value of the Fraudulent Vehicles to reasonable consumers.

257.    As a result of Audi's breach of their express warranties, Plaintiffs received goods whose defect substantially impairs their value to Plaintiffs.  Plaintiffs have been damaged as a result of, inter alia, the diminished value of Audi's products.

-45-

258.     As a direct and proximate result of Audi's breach of express warranties, Plaintiffs have been damaged in an amount to be determined at trial.

## OKLAHOMA COUNTS

### OKLAHOMA COUNT 1
### VIOLATIONS OF OKLAHOMA CONSUMER PROTECTION ACT
(Okla. Stat. Tit. 15 § 751, et seq.)
(On Behalf of the Oklahoma Plaintiffs)

259.     Plaintiffs incorporate by reference each preceding paragraph as though fully set forth herein.

260.     Audi and Plaintiffs are "persons" within the meaning of Okla. Stat. Tit. 15 § 752.1.

261.     Audi engaged in "the course of [its] business" within the meaning of Okla. Stat. Tit. 15 § 752.3 with respect to the acts alleged herein. .

262.     The Oklahoma Consumer Protection Act ("Oklahoma CPA") prohibits, in the course of business: "mak[ing] a false or misleading representation, knowingly or with reason to know, as to the characteristics …, uses, [or] benefits, of the subject of a consumer transaction," or making a false representation, "knowingly or with reason to know, that the subject of a consumer transaction is of a particular standard, style or model, if it is of another or "[a]dvertis[ing], knowingly or with reason to know, the subject of a consumer transaction with intent not to sell it as advertised;" and otherwise committing "an unfair or deceptive trade practice." Okla. Stat. Tit. 15 § 753.

263.     In the course of its business, Audi concealed and suppressed material facts concerning the Fraudulent Vehicles.  Defendants accomplished this by installing illegal defeat device software in the Fraudulent Vehicles that caused the vehicles to operate in a low emission test mode only during emissions testing.  During normal operations, the Fraudulent Vehicles

would emit grossly larger quantities of noxious $CO_2$ gasses. The result was what Audi intended—the Fraudulent Vehicles passed emissions testing by way of deliberately induced false readings. Plaintiffs had no way of discerning that Audi's representations were false and misleading because Audi's defeat device software was extremely sophisticated technology. Plaintiffs did not and could not unravel Audi's deception on their own.

264.     Audi thus violated the Act by, at minimum: employing deception, deceptive acts or practices, fraud, misrepresentations, or concealment, suppression or omission of any material fact with intent that others rely upon such concealment, suppression or omission, in connection with the sale of Fraudulent Vehicles.

265.     Audi intentionally and knowingly misrepresented material facts regarding the Fraudulent Vehicles with intent to mislead Plaintiffs.

266.     Audi knew or should have known that its conduct violated the North Dakota CFA.

267.     Audi owed Plaintiffs a duty to disclose illegality, public health and safety risks, the true nature of the Fraudulent Vehicles and the devaluing of safety at Audi, because Audi:

a.   possessed exclusive knowledge that they were manufacturing, selling, and distributing vehicles throughout the United States that did not comply with regulations;

b.   intentionally concealed the foregoing from regulators and Plaintiffs; and/or

c.   made incomplete representations about the environmental cleanliness and efficiency of the Fraudulent Vehicles generally, and the use of the defeat device in particular, while purposefully withholding material facts from Plaintiffs that contradicted these representations.

268.     Audi's fraudulent use of the "defeat device" and its concealment of the true characteristics of the Fraudulent Vehicles' fuel consumption of $CO_2$ emissions were material to Plaintiffs.

269.   Audi's unfair or deceptive acts or practices were likely to and did in fact deceive regulators and reasonable consumers, including Plaintiffs.

270.   Plaintiffs suffered ascertainable loss and actual damages as a direct and proximate result of Defendants' misrepresentations and its concealment of and failure to disclose material information. Plaintiffs who purchased or leased the Fraudulent Vehicles would not have purchased or leased them at all and/or—if the Vehicles' true nature had been disclosed and mitigated, and the Vehicles rendered legal to sell—would have paid significantly less for them. Plaintiffs also suffered diminished value of their vehicles, as well as lost or diminished use.

271.   As a direct and proximate result of Defendants' violations of the Oklahoma CPA.

272.   Plaintiffs have suffered injury-in-fact and/or actual damage.

273.   Plaintiffs seek actual damages and punitive damages against Audi because Audi's conduct was egregious. Audi's egregious conduct warrants punitive damages.

274.   Further, Audi knowingly committed the conduct described above, and thus, under Oklahoma CPA, Audi is liable to Plaintiffs for treble damages in amounts to be proven at trial, as well as attorneys' fees, costs, and disbursements. Plaintiffs further seek an order enjoining Audi's unfair and/or deceptive acts or practices, and other just and proper available relief under the Oklahoma CPA.

275.   Defendants' violations present a continuing risk to Plaintiffs as well as to the general public. Defendants' unlawful acts and practices complained of herein affect the public interest.

276.   Pursuant to Okla. Stat. Tit. 15 § 761.1, Plaintiffs seek an order enjoining Audi's unfair and/or deceptive acts or practices, damages, punitive damages, and attorneys' fees, costs, and any other just and proper relief available under the Oklahoma CPA.

**OKLAHOMA COUNT 2**
**BREACH OF IMPLIED WARRANTY OF MERCHANTABILITY**
**(Okla. Stat. Tit. 12A §§ 2-314 and 2A-212)**
**(On Behalf of the Oklahoma Plaintiffs)**

277.    Plaintiffs re-allege and incorporate by reference all allegations of the preceding paragraphs as though fully set forth herein.

278.    The Defendants are and were at all relevant times "merchants" with respect to motor vehicles under Okla. Stat. Tit. 12A §§ 2-104(1) and 2-1103(3), and "sellers" of motor vehicles under § 2A-103(1)(t).

279.    With respect to leases, the Defendants are and were at all relevant times "lessors" of motor vehicles under Okla. Stat. Tit. 12A § 2A-103(1)(p).

280.    The Fraudulent Vehicles are and were at all relevant times "goods" within the meaning of Okla. Stat. Tit. 12A §§ 2-105(1) and 2A-103(1)(h).

281.    A warranty that the Fraudulent Vehicles were in merchantable condition and fit for the ordinary purpose for which vehicles are used is implied by law pursuant to Okla. Stat. Tit. 12A §§ 2-314 and 2A-212.

282.    The Fraudulent Vehicles were not in merchantable condition and were not fit for ordinary vehicles are used because they share a common defect in that they are equipped with defeat devices.  These defeat devices are designed to secretly limit emissions and increase fuel efficiency when the vehicles are being subject to regulatory emissions and fuel efficiency testing. However, when the Fraudulent Vehicles are in regular use on the road, they emit a substantially increased amount of noxious gasses.

283.    As a direct and proximate result of Audi's breach of the implied warranty of merchantability, Plaintiffs have been damaged in an amount to be proven at trial.

-49-

**OKLAHOMA COUNT 3**
**BREACH OF EXPRESS WARRANTY**
**(Okla. Stat. Tit. 12A §§ 2-313 and 2A-210)**
**(On Behalf of the Oklahoma Plaintiffs)**

284.    Plaintiffs re-allege and incorporate by reference all preceding allegations as though fully set forth herein.

285.    The Defendants are and were at all relevant times "merchants" with respect to motor vehicles under Okla. Stat. Tit. 12A §§ 2-104(1) and 2-1103(3), and "sellers" of motor vehicles under § 2A-103(1)(t).

286.    With respect to leases, the Defendants are and were at all relevant times "lessors" of motor vehicles under Okla. Stat. Tit. 12A § 2A-103(1)(p).

287.    The Fraudulent Vehicles are and were at all relevant times "goods" within the meaning of Okla. Stat. Tit. 12A §§ 2-105(1), and 2A-103(1)(h).

288.    As set forth above in detail, the Fraudulent Vehicles are inherently defective in that they are equipped with "defeat devices." These defeat devices are designed to secretly limit emissions and increase fuel efficiency when the vehicles are being subject to regulatory emissions and fuel efficiency testing. However, when the Fraudulent Vehicles are in regular use on the road, they emit a substantially increased amount of noxious gasses. The installation of the defeat device substantially impairs the use and value of the Fraudulent Vehicles to reasonable consumers.

289.    As a result of Audi's breach of their express warranties, Plaintiffs received goods whose defect substantially impairs their value to Plaintiffs. Plaintiffs have been damaged as a result of, inter alia, the diminished value of Audi's products.

290.    As a direct and proximate result of Audi's breach of express warranties, Plaintiffs have been damaged in an amount to be determined at trial.

**PENNSYLVANIA COUNTS**

**PENNSYLVANIA COUNT 1**
**VIOLATIONS OF THE PENNSYLVANIA UNFAIR**
**TRADE PRACTICES AND CONSUMER PROTECTION LAW**
**(73 P.S. § 201-1, et seq.)**
**(On Behalf of the Pennsylvania Plaintiffs)**

291.   Plaintiffs incorporate by reference each preceding paragraph as though fully set forth herein.

292.   Audi and Plaintiffs are "persons" within the meaning of 73 P.S. § 201-2.(2).

293.   Audi is engaged in "trade" or "commerce" within the meaning of 73 P.S. § 201-2(3).

294.   The Pennsylvania Unfair Trade Practices Act ("Pennsylvania UTPA") prohibits "unfair or deceptive acts or practices in the conduct of any trade or commerce …." 73 P.S. § 201-3.

295.   In the course of its business, Audi concealed and suppressed material facts concerning the Fraudulent Vehicles.  Defendants accomplished this by installing illegal defeat device software in the Fraudulent Vehicles that caused the vehicles to operate in a low emission test mode only during emissions testing.  During normal operations, the Fraudulent Vehicles would emit grossly larger quantities of noxious $CO_2$ gasses.  The result was what Audi intended—the Fraudulent Vehicles passed emissions testing by way of deliberately induced false readings. Plaintiffs had no way of discerning that Audi's representations were false and misleading because Audi's defeat device software was extremely sophisticated technology. Plaintiffs did not and could not unravel Audi's deception on their own.

296.   Audi thus violated the Act by, at minimum: employing deception, deceptive acts or practices, fraud, misrepresentations, or concealment, suppression or omission of any material

fact with intent that others rely upon such concealment, suppression or omission, in connection with the sale of Fraudulent Vehicles.

297.    Audi intentionally and knowingly misrepresented material facts regarding the Fraudulent Vehicles with intent to mislead Plaintiffs.

298.    Audi knew or should have known that its conduct violated the Pennsylvania UTPA.

299.    Audi owed Plaintiffs a duty to disclose illegality, public health and safety risks, the true nature of the Fraudulent Vehicles and the devaluing of safety at Audi, because Audi:

    a.    possessed exclusive knowledge that they were manufacturing, selling, and distributing vehicles throughout the United States that did not comply with regulations;

    b.    intentionally concealed the foregoing from regulators and Plaintiffs,; and/or

    c.    made incomplete representations about the environmental cleanliness and efficiency of the Fraudulent Vehicles generally, and the use of the defeat device in particular, while purposefully withholding material facts from Plaintiffs that contradicted these representations.

300.    Audi's fraudulent use of the "defeat device" and its concealment of the true characteristics of the Fraudulent Vehicles' fuel consumption of $CO_2$ emissions were material to Plaintiffs.

301.    Audi's unfair or deceptive acts or practices were likely to and did in fact deceive regulators and reasonable consumers, including Plaintiffs.

302.    Plaintiffs suffered ascertainable loss and actual damages as a direct and proximate result of Defendants' misrepresentations and its concealment of and failure to disclose material information. Plaintiffs who purchased or leased the Fraudulent Vehicles would not have purchased or leased them at all and/or—if the Vehicles' true nature had been disclosed and

mitigated, and the Vehicles rendered legal to sell—would have paid significantly less for them. Plaintiffs also suffered diminished value of their vehicles, as well as lost or diminished use.

303.    As a direct and proximate result of Defendants' violations of the Pennsylvania UTPA.

304.    Plaintiffs have suffered injury-in-fact and/or actual damage.

305.    Defendants had an ongoing duty to all Audi customers to refrain from unfair and deceptive practices under the Pennsylvania UTPA in the course of its business.

306.    Defendants' violations present a continuing risk to Plaintiffs as well as to the general public. Defendants' unlawful acts and practices complained of herein affect the public interest.

307.    Pursuant to 73 P.S. § 201-9.2(a), Plaintiffs seek an order enjoining Audi's unfair and/or deceptive acts or practices, damages, punitive damages, and attorneys' fees, costs, and any other just and proper relief available under the Pennsylvania UTPA.

### PENNSYLVANIA COUNT 2
### BREACH OF IMPLIED WARRANTY OF MERCHANTABILITY
### (13 Pa. Cons. Stat. §§ 2314 and 2A212)
### (On Behalf of the Pennsylvania Plaintiffs)

308.    Plaintiffs re-allege and incorporate by reference all allegations of the preceding paragraphs as though fully set forth herein.

309.    The Defendants are and were at all relevant times "merchants" with respect to motor vehicles under 13 Pa. Cons. Stat. §§ 2104 and 2A103(a), and "sellers" of motor vehicles under § 2103(a).

310.    With respect to leases, the Defendants are and were at all relevant times "lessors" of motor vehicles under 13 Pa. Cons. Stat. § 2A103(a).

311.     The Fraudulent Vehicles are and were at all relevant times "goods" within the meaning of 13 Pa. Cons. Stat. §§ 2105(a) and 2A103(a).

312.     A warranty that the Fraudulent Vehicles were in merchantable condition and fit for the ordinary purpose for which vehicles are used is implied by law pursuant to 13 Pa. Cons. Stat. §§ 2314 and 2A212.

313.     The Fraudulent Vehicles were not in merchantable condition and were not fit for ordinary vehicles are used because they share a common defect in that they are equipped with defeat devices.  These defeat devices are designed to secretly limit emissions and increase fuel efficiency when the vehicles are being subject to regulatory emissions and fuel efficiency testing. However, when the Fraudulent Vehicles are in regular use on the road, they emit a substantially increased amount of noxious gasses.

314.     As a direct and proximate result of Audi's breach of the implied warranty of merchantability, Plaintiffs have been damaged in an amount to be proven at trial.

**PENNSYLVANIA COUNT 3**
**BREACH OF EXPRESS WARRANTY**
**(13 Pa. Cons. Stat. §§ 2313 and 2A210)**
**(On Behalf of the Pennsylvania Plaintiffs)**

315.     Plaintiffs re-allege and incorporate by reference all preceding allegations as though fully set forth herein.

316.     The Defendants are and were at all relevant times "merchants" with respect to motor vehicles under 13 Pa. Cons. Stat. § 2104 and 2A103(a), and "sellers" of motor vehicles under § 2103(a).

317.     With respect to leases, the Defendants are and were at all relevant times "lessors" of motor vehicles under 13 Pa. Cons. Stat. § 2A103(a).

318.    The Fraudulent Vehicles are and were at all relevant times "goods" within the meaning of 13 Pa. Cons. Stat.  § 2105(a), and 2A103(a).

319.    As set forth above in detail, the Fraudulent Vehicles are inherently defective in that they are equipped with "defeat devices."  These defeat devices are designed to secretly limit emissions and increase fuel efficiency when the vehicles are being subject to regulatory emissions and fuel efficiency testing. However, when the Fraudulent Vehicles are in regular use on the road, they emit a substantially increased amount of noxious gasses.  The installation of the defeat device substantially impairs the use and value of the Fraudulent Vehicles to reasonable consumers.

320.    As a result of Audi's breach of their express warranties, Plaintiffs received goods whose defect substantially impairs their value to Plaintiffs.  Plaintiffs have been damaged as a result of, inter alia, the diminished value of Audi's products.

321.    As a direct and proximate result of Audi's breach of express warranties, Plaintiffs have been damaged in an amount to be determined at trial.

### **RHODE ISLAND COUNTS**

**RHODE ISLAND COUNT 1**
**VIOLATIONS OF THE RHODE ISLAND DECEPTIVE TRADE PRACTICES ACT**
**(R.I. Gen. Laws § 6-13.1, et seq.)**
**(On Behalf of the Rhode Island Plaintiffs)**

322.    Plaintiffs incorporate by reference each preceding paragraph as though fully set forth herein.

323.    Audi and Plaintiffs are "persons" within the meaning of R.I. Gen. Laws § 6-13.1-1(3).

324.    Audi is engaged in "trade" or "commerce" within the meaning of R.I. Gen. Laws § 6-13.1-1(5).

325.     The Rhode Island Deceptive Trade Practices Act ("Rhode Island DTPA") prohibits "unfair or deceptive acts or practices in the conduct of any trade or commerce" including: (v) [r]epresenting that goods or services have sponsorship, approval, characteristics, ingredients, uses, benefits, or quantities that they do not have"; "(vii) [r]epresenting that goods or services are of a particular standard, quality, or grade …, if they are of another"; (ix) [a]dvertising goods or services with intent not to sell them as advertised"; "(xiii) [u]sing any other methods, acts or practices which mislead or deceive members of the public in a material respect." R.I. Gen. Laws § 6-13.1-1(6).

326.     In the course of its business, Audi concealed and suppressed material facts concerning the Fraudulent Vehicles.  Defendants accomplished this by installing illegal defeat device software in the Fraudulent Vehicles that caused the vehicles to operate in a low emission test mode only during emissions testing.  During normal operations, the Fraudulent Vehicles would emit grossly larger quantities of noxious $CO_2$ gasses.  The result was what Audi intended—the Fraudulent Vehicles passed emissions testing by way of deliberately induced false readings. Plaintiffs had no way of discerning that Audi's representations were false and misleading because Audi's defeat device software was extremely sophisticated technology. Plaintiffs did not and could not unravel Audi's deception on their own.

327.     Audi thus violated the Act by, at minimum: employing deception, deceptive acts or practices, fraud, misrepresentations, or concealment, suppression or omission of any material fact with intent that others rely upon such concealment, suppression or omission, in connection with the sale of Fraudulent Vehicles.

328.     Audi intentionally and knowingly misrepresented material facts regarding the Fraudulent Vehicles with intent to mislead Plaintiffs.

329.    Audi knew or should have known that its conduct violated the Rhode Island UTPA.

330.    Audi owed Plaintiffs a duty to disclose illegality, public health and safety risks, the true nature of the Fraudulent Vehicles and the devaluing of safety at Audi, because Audi:

    a.  possessed exclusive knowledge that they were manufacturing, selling, and distributing vehicles throughout the United States that did not comply with regulations;

    b.  intentionally concealed the foregoing from regulators and Plaintiffs,; and/or

    c.   made incomplete representations about the environmental cleanliness and efficiency of the Fraudulent Vehicles generally, and the use of the defeat device in particular, while purposefully withholding material facts from Plaintiffs that contradicted these representations.

331.    Audi's fraudulent use of the "defeat device" and its concealment of the true characteristics of the Fraudulent Vehicles' fuel consumption of $CO_2$ emissions were material to Plaintiffs.

332.    Audi's unfair or deceptive acts or practices were likely to and did in fact deceive regulators and reasonable consumers, including Plaintiffs.

333.    Plaintiffs suffered ascertainable loss and actual damages as a direct and proximate result of Defendants' misrepresentations and its concealment of and failure to disclose material information. Plaintiffs who purchased or leased the Fraudulent Vehicles would not have purchased or leased them at all and/or—if the Vehicles' true nature had been disclosed and mitigated, and the Vehicles rendered legal to sell—would have paid significantly less for them. Plaintiffs also suffered diminished value of their vehicles, as well as lost or diminished use.

334.    As a direct and proximate result of Defendants' violations of the Rhode Island UTPA, Plaintiffs have suffered injury-in-fact and/or actual damage.

335.    Defendants had an ongoing duty to all Audi customers to refrain from unfair and deceptive practices under the Rhode Island DTPA in the course of its business.

336.    Defendants' violations present a continuing risk to Plaintiffs as well as to the general public. Defendants' unlawful acts and practices complained of herein affect the public interest. Plaintiffs are entitled to recover the greater of actual damages or $200 pursuant to R.I. Gen. Laws § 6-13.1-5.2(a). Plaintiffs are also entitled to punitive damages because Audi engaged in conduct amounting to a particularly aggravated, deliberate disregard of the rights of others.

## RHODE ISLAND COUNT 2
## BREACH OF IMPLIED WARRANTY OF MERCHANTABILITY
### (6A R.I. Gen. Laws §§ 6A-2-314 and 6A-2.1-212)
### (On Behalf of the Rhode Island Plaintiffs)

337.    Plaintiffs re-allege and incorporate by reference all allegations of the preceding paragraphs as though fully set forth herein.

338.    The Defendants are and were at all relevant times "merchants" with respect to motor vehicles under 6A R.I. Gen. Laws §§ 6A-2-104(1) and 6A-2.1-103(1)(t), and "sellers" of motor vehicles under § 6A-2-103(a)(4).

339.    With respect to leases, the Defendants are and were at all relevant times "lessors" of motor  vehicles under 6A R.I. Gen. Laws § 6A-2.1-103(1)(p).

340.    The Fraudulent Vehicles are and were at all relevant times "goods" within the meaning of 6A R.I. Gen. Laws §§ 6A-2-105(1) and 6A-2.1-103(1)(h).

341.    A warranty that the Fraudulent Vehicles were in merchantable condition and fit for the ordinary purpose for which vehicles are used is implied by law pursuant to 6A R.I. Gen. Laws §§ 6A-2-314 and 6A-2.1-212.

342.    The Fraudulent Vehicles were not in merchantable condition and were not fit for ordinary vehicles are used because they share a common defect in that they are equipped with

defeat devices.  These defeat devices are designed to secretly limit emissions and increase fuel efficiency when the vehicles are being subject to regulatory emissions and fuel efficiency testing. However, when the Fraudulent Vehicles are in regular use on the road, they emit a substantially increased amount of noxious gasses.

343.    As a direct and proximate result of Audi's breach of the implied warranty of merchantability, Plaintiffs have been damaged in an amount to be proven at trial.

**RHODE ISLAND COUNT 3**
**BREACH OF EXPRESS WARRANTY**
**(6A R.I. Gen. Laws §§ 6A-2-313 and 6A-2.1-210)**
**(On Behalf of the Rhode Island Plaintiffs)**

344.    Plaintiffs re-allege and incorporate by reference all preceding allegations as though fully set forth herein.

345.    The Defendants are and were at all relevant times "merchants" with respect to motor vehicles under 6A R.I. Gen. Laws §§ 6A-2-104(1) and 6A-2.1-103(1)(t), and "sellers" of motor vehicles under § 6A-2-103(a)(4).

346.    With respect to leases, the Defendants are and were at all relevant times "lessors" of motor vehicles under 6A R.I. Gen. Laws § 6A-2.1-103(1)(p).

347.    The Fraudulent Vehicles are and were at all relevant times "goods" within the meaning of 6A R.I. Gen. Laws §§ 6A-2-105(1) and 6A-2.1-103(1)(h).

348.    As set forth above in detail, the Fraudulent Vehicles are inherently defective in that they are equipped with "defeat devices."  These defeat devices are designed to secretly limit emissions and increase fuel efficiency when the vehicles are being subject to regulatory emissions and fuel efficiency testing. However, when the Fraudulent Vehicles are in regular use on the road, they emit a substantially increased amount of noxious gasses.  The installation of the

defeat device substantially impairs the use and value of the Fraudulent Vehicles to reasonable consumers.

349.     As a result of Audi's breach of their express warranties, Plaintiffs received goods whose defect substantially impairs their value to Plaintiffs.  Plaintiffs have been damaged as a result of, inter alia, the diminished value of Audi's products.

350.     As a direct and proximate result of Audi's breach of express warranties, Plaintiffs have been damaged in an amount to be determined at trial.

## SOUTH CAROLINA COUNTS

### SOUTH CAROLINA COUNT 1
### IOLATIONS OF THE SOUTH CAROLINA UNFAIR TRADE PRACTICES ACT
### (S.C. Code Ann. § 39-5-10, et seq.)
### (On Behalf of the South Carolina Plaintiffs)

351.     Plaintiffs incorporate by reference each preceding paragraph as though fully set forth herein.

352.     Audi, Plaintiffs are "persons" within the meaning of S.C. Code § 39-5-10(a).

353.     Audi is engaged in "trade" or "commerce" within the meaning of S.C. Code § 39-5-10(b).

354.     The South Carolina Unfair Trade Practices Act ("South Carolina UTPA") prohibits "unfair or deceptive acts or practices in the conduct of any trade or commerce." S.C. Code § 39-5-20(a).

355.     In the course of its business, Audi concealed and suppressed material facts concerning the Fraudulent Vehicles.  Defendants accomplished this by installing illegal defeat device software in the Fraudulent Vehicles that caused the vehicles to operate in a low emission test mode only during emissions testing.  During normal operations, the Fraudulent Vehicles would emit grossly larger quantities of noxious $CO_2$ gasses.  The result was what Audi

-60-

intended—the Fraudulent Vehicles passed emissions testing by way of deliberately induced false readings. Plaintiffs had no way of discerning that Audi's representations were false and misleading because Audi's defeat device software was extremely sophisticated technology. Plaintiffs did not and could not unravel Audi's deception on their own.

356.    Audi thus violated the Act by, at minimum: employing deception, deceptive acts or practices, fraud, misrepresentations, or concealment, suppression or omission of any material fact with intent that others rely upon such concealment, suppression or omission, in connection with the sale of Fraudulent Vehicles.

357.    Audi intentionally and knowingly misrepresented material facts regarding the Fraudulent Vehicles with intent to mislead Plaintiffs.

358.    Audi knew or should have known that its conduct violated the South Carolina UTPA

359.    Audi owed Plaintiffs a duty to disclose illegality, public health and safety risks, the true nature of the Fraudulent Vehicles and the devaluing of safety at Audi, because Audi:

      a.    possessed exclusive knowledge that they were manufacturing, selling, and distributing vehicles throughout the United States that did not comply with regulations;

      b.    intentionally concealed the foregoing from regulators and Plaintiffs,; and/or

      c.    made incomplete representations about the environmental cleanliness and efficiency of the Fraudulent Vehicles generally, and the use of the defeat device in particular, while purposefully withholding material facts from Plaintiffs that contradicted these representations.

360.    Audi's fraudulent use of the "defeat device" and its concealment of the true characteristics of the Fraudulent Vehicles' fuel consumption of $CO_2$ emissions were material to Plaintiffs.

361.    Audi's unfair or deceptive acts or practices were likely to and did in fact deceive regulators and reasonable consumers, including Plaintiffs.

362.    Plaintiffs suffered ascertainable loss and actual damages as a direct and proximate result of Defendants' misrepresentations and its concealment of and failure to disclose material information. Plaintiffs who purchased or leased the Fraudulent Vehicles would not have purchased or leased them at all and/or—if the Vehicles' true nature had been disclosed and mitigated, and the Vehicles rendered legal to sell—would have paid significantly less for them. Plaintiffs also suffered diminished value of their vehicles, as well as lost or diminished use.

363.    As a direct and proximate result of Defendants' violations of the South Carolina UTPA, Plaintiffs have suffered injury-in-fact and/or actual damage.

364.    Defendants had an ongoing duty to all Audi customers to refrain from unfair and deceptive practices under the South Carolina UTPA in the course of its business.

365.    Defendants' violations present a continuing risk to Plaintiffs as well as to the general public. Defendants' unlawful acts and practices complained of herein affect the public interest.

366.    Pursuant to S.C. Code § 39-5-140(a), Plaintiffs seek an order enjoining Audi's unfair and/or deceptive acts or practices, damages, treble damages for willful and knowing violations, punitive damages, and attorneys' fees, costs, and any other just and proper relief available under the South Carolina UTPA.

**SOUTH CAROLINA COUNT 2**
**VIOLATIONS OF THE SOUTH CAROLINA REGULATION OF MANUFACTURERS,**
**DISTRIBUTORS, AND DEALERS ACT**
**(S.C. Code Ann. § 56-15-10, et seq.)**
**(On Behalf of the South Carolina Plaintiffs)**

367.     Plaintiffs re-allege and incorporates by reference all paragraphs as though fully set forth herein.

368.     The Defendants were "manufacturer[s]" as set forth in S.C. Code Ann. § 56-15-10, as it was engaged in the business of manufacturing or assembling new and unused motor vehicles.

369.     The Defendants committed unfair or deceptive acts or practices that violated the South Carolina Regulation of Manufacturers, Distributors, and Dealers Act ("Dealers Act"), S.C. Code Ann. § 56-15-30.

370.     The Defendants engaged in actions which were arbitrary, in bad faith, unconscionable, and which caused damage to Plaintiffs and to the public.

371.     The Defendants' bad faith and unconscionable actions include, but are not limited to: (1) representing that Fraudulent Vehicles have characteristics, uses, benefits, and qualities which they do not have, (2) representing that Fraudulent Vehicles are of a particular standard, quality, and grade when they are not, (3) advertising Fraudulent Vehicles with the intent not to sell them as advertised, (4) representing that a transaction involving Fraudulent Vehicles confers or involves rights, remedies, and obligations which it does not, and (5) representing that the subject of a transaction involving Fraudulent Vehicles has been supplied in accordance with a previous representation when it has not.

372.     The Defendants resorted to and used false and misleading advertisements in connection with its business. As alleged above, the Defendants made numerous material

statements about the safety, cleanliness, efficiency and reliability of the Fraudulent Vehicles that were either false or misleading. Each of these statements contributed to the deceptive context of Audi's unlawful advertising and representations as a whole.

373.     Plaintiffs are entitled to double their actual damages, the cost of the suit, attorney's fees pursuant to S.C. Code Ann. § 56-15-110. Plaintiffs also seek injunctive relief under S.C. Code Ann. § 56-15-110. Plaintiffs also seek treble damages because the Defendants acted maliciously.

**SOUTH CAROLINA COUNT 3**
**BREACH OF IMPLIED WARRANTY OF MERCHANTABILITY**
**(S.C. Code §§ 36-2-314 and 36-2A-212)**
**(On Behalf of the South Carolina Plaintiffs)**

374.     Plaintiffs re-allege and incorporate by reference all allegations of the preceding paragraphs as though fully set forth herein.

375.     The Defendants are and were at all relevant times "merchants" with respect to motor vehicles under S.C. Code §§ 36-2-104(1) and 36-2A-103(1)(t), and "sellers" of motor vehicles under § 36-2-103(1)(d).

376.     With respect to leases, the Defendants are and were at all relevant times "lessors" of motor vehicles under S.C. Code § 36-2A-103(1)(p).

377.     The Fraudulent Vehicles are and were at all relevant times "goods" within the meaning of S.C. Code §§ 36-2-105(1) and 36-2A-103(1)(h).

378.     A warranty that the Fraudulent Vehicles were in merchantable condition and fit for the ordinary purpose for which vehicles are used is implied by law pursuant to S.C. Code §§ 36-2- 314 and 36-2A-212.

379.     The Fraudulent Vehicles were not in merchantable condition and were not fit for ordinary vehicles are used because they share a common defect in that they are equipped with

defeat devices.  These defeat devices are designed to secretly limit emissions and increase fuel

efficiency when the vehicles are being subject to regulatory emissions and fuel efficiency testing.

However, when the Fraudulent Vehicles are in regular use on the road, they emit a substantially

increased amount of noxious gasses.

380.    As a direct and proximate result of Audi's breach of the implied warranty of

merchantability, Plaintiffs have been damaged in an amount to be proven at trial.

**SOUTH CAROLINA COUNT 4**
**BREACH OF EXPRESS WARRANTY**
**(S.C. Code §§ 36-2-313 and 36-2A-210)**
**(On Behalf of the South Carolina Plaintiffs)**

381.    Plaintiffs re-allege and incorporate by reference all preceding allegations as

though fully set forth herein.

382.    The Defendants are and were at all relevant times "merchants" with respect to

motor vehicles under S.C. Code §§ 36-2-104(1) and 36-2A-103(1)(t), and "sellers" of motor

vehicles under § 36-2-103(1)(d).

383.    With respect to leases, the Defendants are and were at all relevant times "lessors"

of motor vehicles under S.C. Code § 36-2A-103(1)(p).

384.    The Fraudulent Vehicles are and were at all relevant times "goods" within the

meaning of S.C. Code §§ 36-2-105(1) and 36-2A-103(1)(h).

385.    As set forth above in detail, the Fraudulent Vehicles are inherently defective in

that they are equipped with "defeat devices."  These defeat devices are designed to secretly limit

emissions and increase fuel efficiency when the vehicles are being subject to regulatory

emissions and fuel efficiency testing. However, when the Fraudulent Vehicles are in regular use

on the road, they emit a substantially increased amount of noxious gasses.  The installation of the

defeat device substantially impairs the use and value of the Fraudulent Vehicles to reasonable consumers.

386.    As a result of Audi's breach of their express warranties, Plaintiffs received goods whose defect substantially impairs their value to Plaintiffs.  Plaintiffs have been damaged as a result of, inter alia, the diminished value of Audi's products.

387.    As a direct and proximate result of Audi's breach of express warranties, Plaintiffs have been damaged in an amount to be determined at trial.

## SOUTH DAKOTA COUNTS

### SOUTH DAKOTA COUNT 1
### VIOLATIONS OF THE SOUTH DAKOTA
### DECEPTIVE TRADE PRACTICES AND CONSUMER PROTECTION LAW
### (S.D. Codified Laws § 37-24-6)
### (On Behalf of the South Dakota Plaintiffs)

388.    Plaintiffs incorporate by reference each preceding paragraph as though fully set forth herein.

389.    Audi and Plaintiffs are "persons" within the meaning of S.D. Codified Laws § 37-24-1(8).

390.    Audi is engaged in "trade" or "commerce" within the meaning of S.D. Codified Laws § 37-24-1(13).

391.    The South Dakota Deceptive Trade Practices and Consumer Protection ("South Dakota CPA") prohibits "deceptive acts or practices, which are defined to include "[k]nowingly and intentionally act, use, or employ any deceptive act or practice, fraud, false pretense, false promises, or misrepresentation or to conceal, suppress, or omit any material fact in connection with the sale or advertisement of any merchandise, regardless of whether any person has in fact been misled, deceived, or damaged thereby." S.D. Codified Laws § 37-24-6(1).

392.    In the course of its business, Audi concealed and suppressed material facts concerning the Fraudulent Vehicles.  Defendants accomplished this by installing illegal defeat device software in the Fraudulent Vehicles that caused the vehicles to operate in a low emission test mode only during emissions testing.  During normal operations, the Fraudulent Vehicles would emit grossly larger quantities of noxious $CO_2$ gasses.  The result was what Audi intended—the Fraudulent Vehicles passed emissions testing by way of deliberately induced false readings. Plaintiffs had no way of discerning that Audi's representations were false and misleading because Audi's defeat device software was extremely sophisticated technology. Plaintiffs did not and could not unravel Audi's deception on their own.

393.    Audi thus violated the Act by, at minimum: employing deception, deceptive acts or practices, fraud, misrepresentations, or concealment, suppression or omission of any material fact with intent that others rely upon such concealment, suppression or omission, in connection with the sale of Fraudulent Vehicles.

394.    Audi intentionally and knowingly misrepresented material facts regarding the Fraudulent Vehicles with intent to mislead Plaintiffs.

395.    Audi knew or should have known that its conduct violated the South Dakota CPA.

396.    Audi owed Plaintiffs a duty to disclose illegality, public health and safety risks, the true nature of the Fraudulent Vehicles and the devaluing of safety at Audi, because Audi:

a.    possessed exclusive knowledge that they were manufacturing, selling, and distributing vehicles throughout the United States that did not comply with regulations;

b.    intentionally concealed the foregoing from regulators and Plaintiffs,; and/or

c.    made incomplete representations about the environmental cleanliness and efficiency of the Fraudulent Vehicles generally, and the use of the defeat device in particular, while purposefully withholding material facts from Plaintiffs that contradicted these representations.

397. Audi's fraudulent use of the "defeat device" and its concealment of the true characteristics of the Fraudulent Vehicles' fuel consumption of $CO_2$ emissions were material to Plaintiffs.

398. Audi's unfair or deceptive acts or practices were likely to and did in fact deceive regulators and reasonable consumers, including Plaintiffs.

399. Plaintiffs suffered ascertainable loss and actual damages as a direct and proximate result of Defendants' misrepresentations and its concealment of and failure to disclose material information. Plaintiffs who purchased or leased the Fraudulent Vehicles would not have purchased or leased them at all and/or—if the Vehicles' true nature had been disclosed and mitigated, and the Vehicles rendered legal to sell—would have paid significantly less for them. Plaintiffs also suffered diminished value of their vehicles, as well as lost or diminished use.

400. As a direct and proximate result of Defendants' violations of the South Dakota CPA, Plaintiffs have suffered injury-in-fact and/or actual damage.

401. Defendants had an ongoing duty to all Audi customers to refrain from unfair and deceptive practices under the South Dakota CPA in the course of its business.

402. Defendants' violations present a continuing risk to Plaintiffs as well as to the general public. Defendants' unlawful acts and practices complained of herein affect the public interest.

403. Pursuant to S.D. Codified Laws § 37-24-31, Plaintiffs seek an order enjoining Audi's unfair and/or deceptive acts or practices, damages, punitive damages, and attorneys' fees, costs, and any other just and proper relief to the extent available under the South Dakota CPA.

**SOUTH DAKOTA COUNT 2**
**BREACH OF IMPLIED WARRANTY OF MERCHANTABILITY**
**(S.D. Codified Laws §§ 57A-2-314 and 57A-2A-212)**
**(On Behalf of the South Dakota Plaintiffs)**

404.   Plaintiffs re-allege and incorporate by reference all allegations of the preceding paragraphs as though fully set forth herein.

405.   The Defendants are and were at all relevant times "merchants" with respect to motor vehicles under S.D. Codified Laws §§ 57A-104(1) and 57A-2A-103(1)(t), and "sellers" of motor vehicles under § 57A-104(1)(d).

406.   With respect to leases, the Defendants are and were at all relevant times "lessors" of motor vehicles under S.D. Codified Laws § 57A-2A-103(1)(p).

407.   The Fraudulent Vehicles are and were at all relevant times "goods" within the meaning of S.D. Codified Laws §§ 57A-2-105(1) and 57A-2A-103(1)(h).

408.   A warranty that the Fraudulent Vehicles were in merchantable condition and fit for the ordinary purpose for which vehicles are used is implied by law S.D. Codified Laws §§ 57A-2-314 and 57A-2A-212.

409.   The Fraudulent Vehicles were not in merchantable condition and were not fit for ordinary vehicles are used because they share a common defect in that they are equipped with defeat devices.  These defeat devices are designed to secretly limit emissions and increase fuel efficiency when the vehicles are being subject to regulatory emissions and fuel efficiency testing.  However, when the Fraudulent Vehicles are in regular use on the road, they emit a substantially increased amount of noxious gasses.

410.   As a direct and proximate result of Audi's breach of the implied warranty of merchantability, Plaintiffs have been damaged in an amount to be proven at trial.

**SOUTH DAKOTA COUNT 3**
**BREACH OF EXPRESS WARRANTY**
**(S.D. Codified Laws §§ 57A-2-313 and 57A-2A-210)**
**(On Behalf of the South Dakota Plaintiffs)**

411.     Plaintiffs re-allege and incorporate by reference all preceding allegations as though fully set forth herein.

412.     The Defendants are and were at all relevant times "merchants" with respect to motor vehicles under S.D. Codified Laws §§ 57A-104(1) and 57A-2A-103(1)(t), and "sellers" of motor vehicles under § 57A-104(1)(d).

413.     With respect to leases, the Defendants are and were at all relevant times "lessors" of motor vehicles under S.D. Codified Laws § 57A-2A-103(1)(p).

414.     The Fraudulent Vehicles are and were at all relevant times "goods" within the meaning of S.D. Codified Laws §§ 57A-2-105(1) and 57A-2A-103(1)(h).

415.     As set forth above in detail, the Fraudulent Vehicles are inherently defective in that they are equipped with "defeat devices."  These defeat devices are designed to secretly limit emissions and increase fuel efficiency when the vehicles are being subject to regulatory emissions and fuel efficiency testing. However, when the Fraudulent Vehicles are in regular use on the road, they emit a substantially increased amount of noxious gasses.  The installation of the defeat device substantially impairs the use and value of the Fraudulent Vehicles to reasonable consumers.

416.     As a result of Audi's breach of their express warranties, Plaintiffs received goods whose defect substantially impairs their value to Plaintiffs.  Plaintiffs have been damaged as a result of, inter alia, the diminished value of Audi's products.

417.     As a direct and proximate result of Audi's breach of express warranties, Plaintiffs have been damaged in an amount to be determined at trial.

## TENNESSEE COUNTS

### TENNESSEE COUNT 1
### VIOLATIONS OF TENNESSEE CONSUMER PROTECTION ACT OF 1977
(Tenn. Code Ann. § 47-18-101, et seq.)
(On Behalf of the Tennessee Plaintiffs)

418.     Plaintiffs incorporate by reference each preceding paragraph as though fully set forth herein.

419.     Plaintiffs are "natural persons" and "consumers" within the meaning of Tenn. Code § 47-18-103(2). Defendants are "person[s]" within the meaning of Tenn. Code § 47-18-103(9).

420.     Audi is engaged in "trade" or "commerce" or "consumer transactions" within the meaning Tenn. Code § 47-18-103(9).

421.     The Tennessee Consumer Protection Act ("Tennessee CPA") prohibits "unfair or deceptive acts or practices affecting the conduct of any trade or commerce." Tenn. Code § 47-18- 104.

422.     In the course of its business, Audi concealed and suppressed material facts concerning the Fraudulent Vehicles.  Defendants accomplished this by installing illegal defeat device software in the Fraudulent Vehicles that caused the vehicles to operate in a low emission test mode only during emissions testing.  During normal operations, the Fraudulent Vehicles would emit grossly larger quantities of noxious $CO_2$ gasses.  The result was what Audi intended—the Fraudulent Vehicles passed emissions testing by way of deliberately induced false readings. Plaintiffs had no way of discerning that Audi's representations were false and misleading because Audi's defeat device software was extremely sophisticated technology. Plaintiffs did not and could not unravel Audi's deception on their own.

423.    Audi thus violated the Act by, at minimum: employing deception, deceptive acts or practices, fraud, misrepresentations, or concealment, suppression or omission of any material fact with intent that others rely upon such concealment, suppression or omission, in connection with the sale of Fraudulent Vehicles.

424.    Audi intentionally and knowingly misrepresented material facts regarding the Fraudulent Vehicles with intent to mislead Plaintiffs.

425.    Audi knew or should have known that its conduct violated the Tennessee CPA.

426.    Audi owed Plaintiffs a duty to disclose illegality, public health and safety risks, the true nature of the Fraudulent Vehicles and the devaluing of safety at Audi, because Audi:

    a.    possessed exclusive knowledge that they were manufacturing, selling, and distributing vehicles throughout the United States that did not comply with regulations;

    b.    intentionally concealed the foregoing from regulators and Plaintiffs,; and/or

    c.    made incomplete representations about the environmental cleanliness and efficiency of the Fraudulent Vehicles generally, and the use of the defeat device in particular, while purposefully withholding material facts from Plaintiffs that contradicted these representations.

427.    Audi's fraudulent use of the "defeat device" and its concealment of the true characteristics of the Fraudulent Vehicles' fuel consumption of $CO_2$ emissions were material to Plaintiffs.

428.    Audi's unfair or deceptive acts or practices were likely to and did in fact deceive regulators and reasonable consumers, including Plaintiffs.

429.    Plaintiffs suffered ascertainable loss and actual damages as a direct and proximate result of Defendants' misrepresentations and its concealment of and failure to disclose material information. Plaintiffs who purchased or leased the Fraudulent Vehicles would not have

purchased or leased them at all and/or—if the Vehicles' true nature had been disclosed and mitigated, and the Vehicles rendered legal to sell—would have paid significantly less for them. Plaintiffs also suffered diminished value of their vehicles, as well as lost or diminished use.

430.    As a direct and proximate result of Defendants' violations of the Tennessee CPA, Plaintiffs have suffered injury-in-fact and/or actual damage.

431.    Defendants had an ongoing duty to all Audi customers to refrain from unfair and deceptive practices under the Tennessee CPA in the course of its business.

432.    Defendants' violations present a continuing risk to Plaintiffs as well as to the general public. Defendants' unlawful acts and practices complained of herein affect the public interest.

433.    Pursuant to Tenn. Code § 47-18-109, Plaintiffs seek an order enjoining Audi's unfair and/or deceptive acts or practices, damages, treble damages for willful and knowing violations, pursuant to § 47-18-109(a)(3), punitive damages, and attorneys' fees, costs, and any other just and proper relief to the extent available under the Tennessee CPA.

### TENNESSEE COUNT 2
### BREACH OF IMPLIED WARRANTY OF MERCHANTABILITY
#### (Tenn. Code §§ 47-2-314 and 47-2A-212)
#### (On Behalf of the Tennessee Plaintiffs)

434.    Plaintiffs re-allege and incorporate by reference all allegations of the preceding paragraphs as though fully set forth herein.

435.    The Defendants are and were at all relevant times "merchants" with respect to motor vehicles under Tenn. Code §§ 47-2-104(1) and 47-2A-103(1)(t), and "sellers" of motor vehicles under § 47-2-103(1)(d).

436.    With respect to leases, the Defendants are and were at all relevant times "lessors" of motor vehicles under Tenn. Code § 47-2A-103(1)(p).

437.    The Fraudulent Vehicles are and were at all relevant times "goods" within the meaning of Tenn. Code §§ 47-2-105(1) and 47-2A-103(1)(h).

438.    A warranty that the Fraudulent Vehicles were in merchantable condition and fit for the ordinary purpose for which vehicles are used is implied by law pursuant to Tenn. Code §§ 47-2- 314 and 47-2A-212.

439.    These Fraudulent Vehicles, when sold or leased and at all times thereafter, were not in merchantable condition and are not fit for the ordinary purpose for which vehicles are used.

440.    The Fraudulent Vehicles were not in merchantable condition and were not fit for ordinary vehicles are used because they share a common defect in that they are equipped with defeat devices.  These defeat devices are designed to secretly limit emissions and increase fuel efficiency when the vehicles are being subject to regulatory emissions and fuel efficiency testing. However, when the Fraudulent Vehicles are in regular use on the road, they emit a substantially increased amount of noxious gasses.

441.    As a direct and proximate result of Audi's breach of the implied warranty of merchantability, Plaintiffs have been damaged in an amount to be proven at trial.

**TENNESSEE COUNT 3**
**BREACH OF EXPRESS WARRANTY**
**(Tenn. Code §§ 47-2-313 and 47-2A-210)**
**(On Behalf of the Tennessee Plaintiffs)**

442.    Plaintiffs re-allege and incorporate by reference all preceding allegations as though fully set forth herein.

443.    The Defendants are and were at all relevant times "merchants" with respect to motor vehicles under Tenn. Code §§ 47-2-104(1) and 47-2A-103(1)(t), and "sellers" of motor vehicles under § 47-2-103(1)(d).

444.    With respect to leases, the Defendants are and were at all relevant times "lessors" of motor vehicles under Tenn. Code § 47-2A-103(1)(p).

445.    The Fraudulent Vehicles are and were at all relevant times "goods" within the meaning of Tenn. Code §§ 47-2-105(1) and 47-2A-103(1)(h).

446.    As set forth above in detail, the Fraudulent Vehicles are inherently defective in that they are equipped with "defeat devices."  These defeat devices are designed to secretly limit emissions and increase fuel efficiency when the vehicles are being subject to regulatory emissions and fuel efficiency testing. However, when the Fraudulent Vehicles are in regular use on the road, they emit a substantially increased amount of noxious gasses.  The installation of the defeat device substantially impairs the use and value of the Fraudulent Vehicles to reasonable consumers.

447.    As a result of Audi's breach of their express warranties, Plaintiffs received goods whose defect substantially impairs their value to Plaintiffs.  Plaintiffs have been damaged as a result of, inter alia, the diminished value of Audi's products.

448.    As a direct and proximate result of Audi's breach of express warranties, Plaintiffs have been damaged in an amount to be determined at trial.

## TEXAS COUNTS

### TEXAS COUNT 1
### VIOLATIONS OF THE DECEPTIVE TRADE PRACTICES ACT – CONSUMER PROTECTION ACT
### (Tex. Bus. & Com. Code §§ 17.41, et seq.)
### (On Behalf of the Texas Plaintiffs)

449.    Plaintiffs incorporate by reference each preceding paragraph as though fully set forth herein.

450.    Plaintiffs are individuals, partnerships or corporations with assets of less than $25 million (or are controlled by corporations or entities with less than $25 million in assets), see Tex. Bus. & Com. Code § 17.41, and are therefore "consumers" pursuant to Tex. Bus. & Com. Code § 17.45(4).

451.    Defendants are "person[s]" within the meaning of Tex. Bus. & Com. Code § 17.45(3).

452.    Audi is engaged in "trade" or "commerce" or "consumer transactions" within the meaning Tex. Bus. & Com. Code § 17.46(a).

453.    The Texas Deceptive Trade Practices – Consumer Protection Act ("Texas DTPA") prohibits "false, misleading, or deceptive acts or practices in the conduct of any trade or commerce," Tex. Bus. & Com. Code § 17.46(a), and an "unconscionable action or course of action," which means "an act or practice which, to a consumer's detriment, takes advantage of the lack of knowledge, ability, experience, or capacity of the consumer to a grossly unfair degree." Tex. Bus. & Com. Code §§ 17.45(5) and 17.50(a)(3).

454.    In the course of its business, Audi concealed and suppressed material facts concerning the Fraudulent Vehicles.  Defendants accomplished this by installing illegal defeat device software in the Fraudulent Vehicles that caused the vehicles to operate in a low emission test mode only during emissions testing.  During normal operations, the Fraudulent Vehicles would emit grossly larger quantities of noxious $CO_2$ gasses.  The result was what Audi intended—the Fraudulent Vehicles passed emissions testing by way of deliberately induced false readings. Plaintiffs had no way of discerning that Audi's representations were false and misleading because Audi's defeat device software was extremely sophisticated technology. Plaintiffs did not and could not unravel Audi's deception on their own.

455.    Audi thus violated the Act by, at minimum: employing deception, deceptive acts or practices, fraud, misrepresentations, or concealment, suppression or omission of any material fact with intent that others rely upon such concealment, suppression or omission, in connection with the sale of Fraudulent Vehicles.

456.    Audi intentionally and knowingly misrepresented material facts regarding the Fraudulent Vehicles with intent to mislead Plaintiffs.

457.    Audi knew or should have known that its conduct violated the Texas DTPA.

458.    Audi owed Plaintiffs a duty to disclose illegality, public health and safety risks, the true nature of the Fraudulent Vehicles and the devaluing of safety at Audi, because Audi:

    a.    possessed exclusive knowledge that they were manufacturing, selling, and distributing vehicles throughout the United States that did not comply with regulations;

    b.    intentionally concealed the foregoing from regulators and Plaintiffs,; and/or

    c.    made incomplete representations about the environmental cleanliness and efficiency of the Fraudulent Vehicles generally, and the use of the defeat device in particular, while purposefully withholding material facts from Plaintiffs that contradicted these representations.

459.    Audi's fraudulent use of the "defeat device" and its concealment of the true characteristics of the Fraudulent Vehicles' fuel consumption of $CO_2$ emissions were material to Plaintiffs.

460.    Audi's unfair or deceptive acts or practices were likely to and did in fact deceive regulators and reasonable consumers, including Plaintiffs.

461.    Plaintiffs suffered ascertainable loss and actual damages as a direct and proximate result of Defendants' misrepresentations and its concealment of and failure to disclose material information. Plaintiffs who purchased or leased the Fraudulent Vehicles would not have purchased or leased them at all and/or—if the Vehicles' true nature had been disclosed and

mitigated, and the Vehicles rendered legal to sell—would have paid significantly less for them. Plaintiffs also suffered diminished value of their vehicles, as well as lost or diminished use.

462.    As a direct and proximate result of Defendants' violations of the Texas DTPA, Plaintiffs have suffered injury-in-fact and/or actual damage.

463.    Defendants had an ongoing duty to all Audi customers to refrain from unfair and deceptive practices under the Texas DTPA in the course of its business.

464.    Defendants' violations present a continuing risk to Plaintiffs as well as to the general public. Defendants' unlawful acts and practices complained of herein affect the public interest.

465.    Pursuant to Tex. Bus. & Com. Code § 17.50, Plaintiffs seek an order enjoining Audi's unfair and/or deceptive acts or practices, damages, multiple damages for knowing and intentional violations, pursuant to § 17.50(b)(1), punitive damages, and attorneys' fees, costs, and any other just and proper relief available under the Texas DTPA.

**TEXAS COUNT 2**
**BREACH OF IMPLIED WARRANTY OF MERCHANTABILITY**
**(Tex. Bus. & Com. Code §§ 2.314 and 2A.212)**
**(On Behalf of the Texas Plaintiffs)**

466.    Plaintiffs re-allege and incorporate by reference all allegations of the preceding paragraphs as though fully set forth herein.

467.    The Defendants are and were at all relevant times "merchants" with respect to motor vehicles under Tex. Bus. & Com. Code § 2.104(1) and 2A.103(a)(20), and "sellers" of motor vehicles under § 2.103(a)(4).

468.    With respect to leases, the Defendants are and were at all relevant times "lessors" of motor vehicles under Tex. Bus. & Com. Code § 2A.103(a)(16).

469.   The Fraudulent Vehicles are and were at all relevant times "goods" within the meaning of Tex. Bus. & Com. Code §§ 2.105(a) and 2A.103(a)(8).

470.   A warranty that the Fraudulent Vehicles were in merchantable condition and fit for the ordinary purpose for which vehicles are used is implied by law pursuant to Tex. Bus. & Com. Code §§ 2.314 and 2A.212.

471.   The Fraudulent Vehicles were not in merchantable condition and were not fit for ordinary vehicles are used because they share a common defect in that they are equipped with defeat devices.  These defeat devices are designed to secretly limit emissions and increase fuel efficiency when the vehicles are being subject to regulatory emissions and fuel efficiency testing. However, when the Fraudulent Vehicles are in regular use on the road, they emit a substantially increased amount of noxious gasses.

472.   As a direct and proximate result of Audi's breach of the implied warranty of merchantability, Plaintiffs have been damaged in an amount to be proven at trial.

**TEXAS COUNT 3**
**BREACH OF EXPRESS WARRANTY**
**(Tex. Bus. & Com. Code §§ 2.313 and 2A.210)**
**(On Behalf of the Texas Plaintiffs)**

473.   Plaintiffs re-allege and incorporate by reference all preceding allegations as though fully set forth herein.

474.   The Defendants are and were at all relevant times "merchants" with respect to motor vehicles under Tex. Bus. & Com. Code § 2.104(1) and 2A.103(a)(20), and "sellers" of motor vehicles under § 2.103(a)(4).

475.   With respect to leases, the Defendants are and were at all relevant times "lessors" of motor vehicles under Tex. Bus. & Com. Code § 2A.103(a)(16).

476.    The Fraudulent Vehicles are and were at all relevant times "goods" within the meaning of Tex. Bus. & Com. Code §§ 2.105(a) and 2A.103(a)(8).

477.    As set forth above in detail, the Fraudulent Vehicles are inherently defective in that they are equipped with "defeat devices."  These defeat devices are designed to secretly limit emissions and increase fuel efficiency when the vehicles are being subject to regulatory emissions and fuel efficiency testing. However, when the Fraudulent Vehicles are in regular use on the road, they emit a substantially increased amount of noxious gasses.  The installation of the defeat device substantially impairs the use and value of the Fraudulent Vehicles to reasonable consumers.

478.    As a result of Audi's breach of their express warranties, Plaintiffs received goods whose defect substantially impairs their value to Plaintiffs.  Plaintiffs have been damaged as a result of, inter alia, the diminished value of Audi's products.

479.    As a direct and proximate result of Audi's breach of express warranties, Plaintiffs have been damaged in an amount to be determined at trial.

## UTAH COUNTS

**UTAH COUNT 1**
**VIOLATIONS OF UTAH CONSUMER SALES PRACTICES ACT**
**(Utah Code Ann. § 13-11-1, et seq.)**
**(On Behalf of the Utah Plaintiffs)**

480.    Plaintiffs incorporate by reference each preceding paragraph as though fully set forth herein.

481.    Plaintiffs are "persons" under the Utah Consumer Sales Practices Act ("Utah CSPA"), Utah Code § 13-11-3(5). The sales and leases of the Fraudulent Vehicles to the Plaintiffs were "consumer transactions" within the meaning of Utah Code § 13-11-3(2).

482.    Audi is a "supplier" within the meaning of Utah Code § 13-11-3(6). 3106.

483.     The Utah CSPA makes unlawful any "deceptive act or practice by a supplier in connection with a consumer transaction." Specifically, "a supplier commits a deceptive act or practice if the supplier knowingly or intentionally: (a) indicates that the subject of a consumer transaction has sponsorship, approval, performance characteristics, accessories, uses, or benefits, if it has not" or "(b) indicates that the subject of a consumer transaction is of a particular standard, quality, grade, style, or model, if it is not." Utah Code § 13-11-4. "An unconscionable act or practice by a supplier in connection with a consumer transaction" also violates the Utah CSPA. Utah Code § 13-11-5.

484.     In the course of its business, Audi concealed and suppressed material facts concerning the Fraudulent Vehicles.  Defendants accomplished this by installing illegal defeat device software in the Fraudulent Vehicles that caused the vehicles to operate in a low emission test mode only during emissions testing.  During normal operations, the Fraudulent Vehicles would emit grossly larger quantities of noxious $CO_2$ gasses.  The result was what Audi intended—the Fraudulent Vehicles passed emissions testing by way of deliberately induced false readings. Plaintiffs had no way of discerning that Audi's representations were false and misleading because Audi's defeat device software was extremely sophisticated technology. Plaintiffs did not and could not unravel Audi's deception on their own.

485.     Audi thus violated the Act by, at minimum: employing deception, deceptive acts or practices, fraud, misrepresentations, or concealment, suppression or omission of any material fact with intent that others rely upon such concealment, suppression or omission, in connection with the sale of Fraudulent Vehicles.

486.     Audi intentionally and knowingly misrepresented material facts regarding the Fraudulent Vehicles with intent to mislead Plaintiffs.

487.    Audi knew or should have known that its conduct violated the Utah CSPA.

488.    Audi owed Plaintiffs a duty to disclose illegality, public health and safety risks, the true nature of the Fraudulent Vehicles and the devaluing of safety at Audi, because Audi:

    a.    possessed exclusive knowledge that they were manufacturing, selling, and distributing vehicles throughout the United States that did not comply with regulations;

    b.    intentionally concealed the foregoing from regulators and Plaintiffs,; and/or

    c.     made incomplete representations about the environmental cleanliness and efficiency of the Fraudulent Vehicles generally, and the use of the defeat device in particular, while purposefully withholding material facts from Plaintiffs that contradicted these representations.

489.    Audi's fraudulent use of the "defeat device" and its concealment of the true characteristics of the Fraudulent Vehicles' fuel consumption of $CO_2$ emissions were material to Plaintiffs.

490.     Audi's unfair or deceptive acts or practices were likely to and did in fact deceive regulators and reasonable consumers, including Plaintiffs.

491.    Plaintiffs suffered ascertainable loss and actual damages as a direct and proximate result of Defendants' misrepresentations and its concealment of and failure to disclose material information. Plaintiffs who purchased or leased the Fraudulent Vehicles would not have purchased or leased them at all and/or—if the Vehicles' true nature had been disclosed and mitigated, and the Vehicles rendered legal to sell—would have paid significantly less for them. Plaintiffs also suffered diminished value of their vehicles, as well as lost or diminished use.

492.    As a direct and proximate result of Defendants' violations of the Utah CSPA, Plaintiffs have suffered injury-in-fact and/or actual damage.

493.    Defendants had an ongoing duty to all Audi customers to refrain from unfair and deceptive practices under the Utah CSPA in the course of its business.

494.    Defendants' violations present a continuing risk to Plaintiffs as well as to the general public. Defendants' unlawful acts and practices complained of herein affect the public interest.

## UTAH COUNT 2
## BREACH OF IMPLIED WARRANTY OF MERCHANTABILITY
### (Utah Code §§ 70A-2-314 and 70A-2A-212)
### (On Behalf of the Utah Plaintiffs)

495.    Plaintiffs re-allege and incorporate by reference all allegations of the preceding paragraphs as though fully set forth herein.

496.    The Defendants are and were at all relevant times "merchants" with respect to motor vehicles under Utah Code § 70A-2-104(1) and 70A-2a-103(1)(t), and "sellers" of motor vehicles under § 70A-2-103(1)(d).

497.    With respect to leases, the Defendants are and were at all relevant times "lessors" of motor vehicles under Utah Code § 70A-2a-103(1)(p).

498.    The Fraudulent Vehicles are and were at all relevant times "goods" within the meaning of Utah Code §§ 70A-2-105(1) and 70A-2a-103(1)(h).

499.    A warranty that the Fraudulent Vehicles were in merchantable condition and fit for the ordinary purpose for which vehicles are used is implied by law pursuant to Utah Code §§ 70A-2- 314 and 70A-2a-212.

500.    The Fraudulent Vehicles were not in merchantable condition and were not fit for ordinary vehicles are used because they share a common defect in that they are equipped with defeat devices.  These defeat devices are designed to secretly limit emissions and increase fuel efficiency when the vehicles are being subject to regulatory emissions and fuel efficiency testing. However, when the Fraudulent Vehicles are in regular use on the road, they emit a substantially increased amount of noxious gasses.

501.     As a direct and proximate result of Audi's breach of the implied warranty of merchantability, Plaintiffs have been damaged in an amount to be proven at trial.

**UTAH COUNT 3**
**BREACH OF EXPRESS WARRANTY**
**(Utah Code §§ 70A-2-313 and 70A-2A-210)**
**(On Behalf of the Utah Plaintiffs)**

502.     Plaintiffs re-allege and incorporate by reference all preceding allegations as though fully set forth herein.

503.     The Defendants are and were at all relevant times "merchants" with respect to motor vehicles under Utah Code § 70A-2-104(1) and 70A-2a-103(1)(t), and "sellers" of motor vehicles under § 70A-2-103(1)(d).

504.     With respect to leases, the Defendants are and were at all relevant times "lessors" of motor vehicles under Utah Code § 70A-2a-103(1)(p).

505.     The Fraudulent Vehicles are and were at all relevant times "goods" within the meaning of Utah Code §§ 70A-2-105(1) and 70A-2a-103(1)(h).

506.     As set forth above in detail, the Fraudulent Vehicles are inherently defective in that they are equipped with "defeat devices."  These defeat devices are designed to secretly limit emissions and increase fuel efficiency when the vehicles are being subject to regulatory emissions and fuel efficiency testing. However, when the Fraudulent Vehicles are in regular use on the road, they emit a substantially increased amount of noxious gasses.  The installation of the defeat device substantially impairs the use and value of the Fraudulent Vehicles to reasonable consumers.

507.     As a result of Audi's breach of their express warranties, Plaintiffs received goods whose defect substantially impairs their value to Plaintiffs.  Plaintiffs have been damaged as a result of, inter alia, the diminished value of Audi's products.

508.     As a direct and proximate result of Audi's breach of express warranties, Plaintiffs have been damaged in an amount to be determined at trial.

## VERMONT COUNTS

### VERMONT COUNT 1
### VIOLATIONS OF VERMONT CONSUMER PROTECTION ACT
### (Vt. Stat. Ann. Tit. 9, § 2451 et seq.)
### (On Behalf of the Vermont Plaintiffs)

509.     Plaintiffs incorporate by reference each preceding paragraph as though fully set forth herein.

510.     Plaintiffs are "consumers" within the meaning of Vt. Stat. Tit. 9, § 2451a(a).

511.     Defendants are "person[s]" within the meaning of Vt. Code R. § 100(3) (citing Vt. Stat. Tit. 9, § 2453).

512.     Audi is engaged in "commerce" within the meaning of Vt. Stat. Tit. 9, § 2453(a).

513.     The Vermont Consumer Protection Act ("Vermont CPA") prohibits "[u]nfair methods of competition in commerce and unfair or deceptive acts or practices in commerce…." Vt. Stat. Tit. 9, § 2453(a).

514.     In the course of its business, Audi concealed and suppressed material facts concerning the Fraudulent Vehicles.  Defendants accomplished this by installing illegal defeat device software in the Fraudulent Vehicles that caused the vehicles to operate in a low emission test mode only during emissions testing.  During normal operations, the Fraudulent Vehicles would emit grossly larger quantities of noxious $CO_2$ gasses.  The result was what Audi intended—the Fraudulent Vehicles passed emissions testing by way of deliberately induced false readings. Plaintiffs had no way of discerning that Defendants' representations were false and misleading because Audi's defeat device software was extremely sophisticated technology. Plaintiffs did not and could not unravel Audi's deception on their own.

515.    Audi thus violated the Act by, at minimum: employing deception, deceptive acts or practices, fraud, misrepresentations, or concealment, suppression or omission of any material fact with intent that others rely upon such concealment, suppression or omission, in connection with the sale of Fraudulent Vehicles.

516.    Audi intentionally and knowingly misrepresented material facts regarding the Fraudulent Vehicles with intent to mislead Plaintiffs.

517.    Audi knew or should have known that its conduct violated the Vermont CPA.

518.    Audi owed Plaintiffs a duty to disclose illegality, public health and safety risks, the true nature of the Fraudulent Vehicles and the devaluing of safety at Audi, because Audi:

a.    possessed exclusive knowledge that they were manufacturing, selling, and distributing vehicles throughout the United States that did not comply with regulations;

b.    intentionally concealed the foregoing from regulators and Plaintiffs,; and/or

c.    made incomplete representations about the environmental cleanliness and efficiency of the Fraudulent Vehicles generally, and the use of the defeat device in particular, while purposefully withholding material facts from Plaintiffs that contradicted these representations.

519.    Audi's fraudulent use of the "defeat device" and its concealment of the true characteristics of the Defective Vehicles' fuel consumption of $CO_2$ emissions were material to Plaintiffs.

520.    Audi's unfair or deceptive acts or practices were likely to and did in fact deceive regulators and reasonable consumers, including Plaintiffs.

521.    Plaintiffs suffered ascertainable loss and actual damages as a direct and proximate result of Defendants' misrepresentations and its concealment of and failure to disclose material information. Plaintiffs who purchased or leased the Fraudulent Vehicles would not have purchased or leased them at all and/or—if the Vehicles' true nature had been disclosed and

mitigated, and the Vehicles rendered legal to sell—would have paid significantly less for them. Plaintiffs also suffered diminished value of their vehicles, as well as lost or diminished use.

522.    As a direct and proximate result of Defendants' violations of the Vermont UTPA,

523.    Plaintiffs have suffered injury-in-fact and/or actual damage.

524.    Defendants had an ongoing duty to all Audi customers to refrain from unfair and deceptive practices under the Vermont UTPA in the course of its business.

525.    Defendants' violations present a continuing risk to Plaintiffs as well as to the general public. Defendants' unlawful acts and practices complained of herein affect the public interest.

526.    Pursuant to Vt. Stat. Tit. 9, § 2461(b), Plaintiffs seek an order enjoining Audi's unfair and/or deceptive acts or practices, actual damages, damages up to three times the consideration provided, punitive damages, attorneys' fees, costs, and any other just and proper relief available under the Vermont UTPA.

**VERMONT COUNT 2**
**VERMONT LEMON LAW**
**(Vt. Stat. Tit. 9, § 4170, et al.)**
**(On Behalf of the Vermont Plaintiffs)**

527.    Plaintiffs incorporate by reference each preceding paragraph as though fully set forth herein.

528.    Plaintiffs own or lease "motor vehicles" within the meaning of Vt. Stat. tit. 9, § 4171(6), because these vehicles were purchased, leased, or registered in Vermont by Audi and were registered in Vermont within 15 days of the date of purchase or lease. These vehicles are not: (1) tractors, (2) motorized highway building equipment, (3) road- making appliances, (4) snowmobiles, (5) motorcycles, (5) mopeds, (6) the living portion of recreation vehicles, or (7) trucks with a gross vehicle weight over 10,000 pounds.

529.    The Defendants are "manufacturer[s]" of the Fraudulent Vehicles within the meaning of Vt. Stat. Tit. 9, § 4171(7) because it manufactures and assembles new motor vehicles or imports for distribution through distributors of motor vehicles. It is also a "manufacturer" within the definition of "distributor" and "factory branch." Id.

530.    Plaintiffs are "consumers" within the meaning of Vt. Stat. Tit. 9, § 4171(2) because they bought or leased the Fraudulent Vehicles, were transferred their vehicles during the duration the applicable warranty, or are otherwise entitled to the attendant terms of warranty. They are not governmental entities or a business or commercial enterprise that registers or leases three or more motor vehicles.

531.    The Fraudulent Vehicles did not conform to their express warranties during the term of warranty because they were not cleaner vehicles and contained a "defeat device" designed to circumvent state and federal emissions standards. These devices did in fact circumvent emissions standards and substantially impaired the use, market value, and safety of their motor vehicles.

532.    Audi had actual knowledge of the conformities during the term of warranty.  But the nonconformities continued to exist throughout this term, as they have not been fixed.

533.    Plaintiffs are excused from notifying Audi of the nonconformities because it was already fully aware of the problem—as it intentionally created it—and any repair attempt is futile.

**VERMONT COUNT 3**
**BREACH OF IMPLIED WARRANTY OF MERCHANTABILITY**
**(Vt. Stat. Tit. 9A, §§ 2-314 and 2A-212)**
**(On Behalf of the Vermont Plaintiffs)**

534.    Plaintiffs re-allege and incorporate by reference all allegations of the preceding paragraphs as though fully set forth herein.

535.     The Defendants are and were at all relevant times "merchants" with respect to motor vehicles under Vt. Stat. Tit. 9A, § 2-104(1) and 2A-103(1)(t), and "sellers" of motor vehicles under § 2-103(1)(d).

536.     With respect to leases, the Defendants are and were at all relevant times "lessors" of motor vehicles under Vt. Stat. Tit. 9A, § 2A-103(1)(p).

537.     The Fraudulent Vehicles are and were at all relevant times "goods" within the meaning of Vt. Stat. Tit. 9A, §§ § 2-105(1) and 2A-103(1)(h).

538.     A warranty that the Fraudulent Vehicles were in merchantable condition and fit for the ordinary purpose for which vehicles are used is implied by law pursuant to Vt. Stat. Tit. 9A, §§ 2- 314 and 2A-212.

539.      The Fraudulent Vehicles were not in merchantable condition and were not fit for ordinary vehicles are used because they share a common defect in that they are equipped with defeat devices.  These defeat devices are designed to secretly limit emissions and increase fuel efficiency when the vehicles are being subject to regulatory emissions and fuel efficiency testing. However, when the Fraudulent Vehicles are in regular use on the road, they emit a substantially increased amount of noxious gasses.

540.     As a direct and proximate result of Audi's breach of the implied warranty of merchantability, Plaintiffs have been damaged in an amount to be proven at trial.

**VERMONT COUNT 4**
**BREACH OF EXPRESS WARRANTY**
**(Vt. Stat. Tit. 9A, §§ 2-313 and 2A-210)**
**(On Behalf of the Vermont Plaintiffs)**

541.     Plaintiffs re-allege and incorporate by reference all preceding allegations as though fully set forth herein.

542.     The Defendants are and were at all relevant times "merchants" with respect to motor vehicles under Vt. Stat. Tit. 9A, § 2-104(1) and 2A-103(1)(t), and "sellers" of motor vehicles under § 2-103(1)(d).

543.     With respect to leases, the Defendants are and were at all relevant times "lessors" of motor vehicles under Vt. Stat. Tit. 9A, § 2A-103(1)(p).

544.     The Fraudulent Vehicles are and were at all relevant times "goods" within the meaning of Vt. Stat. Tit. 9A, §§ § 2-105(1) and 2A-103(1)(h).

545.     As set forth above in detail, the Fraudulent Vehicles are inherently defective in that they are equipped with "defeat devices."  These defeat devices are designed to secretly limit emissions and increase fuel efficiency when the vehicles are being subject to regulatory emissions and fuel efficiency testing. However, when the Fraudulent Vehicles are in regular use on the road, they emit a substantially increased amount of noxious gasses.  The installation of the defeat device substantially impairs the use and value of the Fraudulent Vehicles to reasonable consumers.

546.     As a result of Audi's breach of their express warranties, Plaintiffs received goods whose defect substantially impairs their value to Plaintiffs.  Plaintiffs have been damaged as a result of, inter alia, the diminished value of Audi's products.

547.     As a direct and proximate result of Audi's breach of express warranties, Plaintiffs have been damaged in an amount to be determined at trial.

**VIRGINIA COUNTS**

**VIRGINIA COUNT 1**
**VIOLATIONS OF THE VIRGINIA CONSUMER PROTECTION ACT**
(Va. Code Ann. §§ 59.1-196, et seq.)
(On Behalf of the Virginia Plaintiffs)

548.    Plaintiffs incorporate by reference each preceding paragraph as though fully set forth herein.

549.    Defendants, Plaintiffs are "persons" within the meaning of Va. Code § 59.1-198.

550.    Audi is a "supplier" within the meaning of Va. Code § 59.1-198. 3219.  The Virginia Consumer Protection Act ("Virginia CPA") makes unlawful "fraudulent acts or practices." Va. Code § 59.1-200(A).

551.    In the course of its business, Audi concealed and suppressed material facts concerning the Fraudulent Vehicles.  Defendants accomplished this by installing illegal defeat device software in the Fraudulent Vehicles that caused the vehicles to operate in a low emission test mode only during emissions testing.  During normal operations, the Fraudulent Vehicles would emit grossly larger quantities of noxious $CO_2$ gasses.  The result was what Audi intended—the Fraudulent Vehicles passed emissions testing by way of deliberately induced false readings. Plaintiffs had no way of discerning that Audi's representations were false and misleading because Audi's defeat device software was extremely sophisticated technology. Plaintiffs did not and could not unravel Audi's deception on their own.

552.    Audi thus violated the Act by, at minimum: employing deception, deceptive acts or practices, fraud, misrepresentations, or concealment, suppression or omission of any material fact with intent that others rely upon such concealment, suppression or omission, in connection with the sale of Fraudulent Vehicles.

553.    Audi intentionally and knowingly misrepresented material facts regarding the Fraudulent Vehicles with intent to mislead Plaintiffs.

554.    Audi knew or should have known that its conduct violated the Virginia CPA.

555.    Audi owed Plaintiffs a duty to disclose illegality, public health and safety risks, the true nature of the Fraudulent Vehicles and the devaluing of safety at Audi, because Audi:

    a.  possessed exclusive knowledge that they were manufacturing, selling, and distributing vehicles throughout the United States that did not comply with regulations;

    b.  intentionally concealed the foregoing from regulators and Plaintiffs,; and/or

    c.  made incomplete representations about the environmental cleanliness and efficiency of the Fraudulent Vehicles generally, and the use of the defeat device in particular, while purposefully withholding material facts from Plaintiffs that contradicted these representations.

556.    Audi's fraudulent use of the "defeat device" and its concealment of the true characteristics of the Fraudulent Vehicles' fuel consumption of $CO_2$ emissions were material to Plaintiffs.

557.    Audi's unfair or deceptive acts or practices were likely to and did in fact deceive regulators and reasonable consumers, including Plaintiffs.

558.    Plaintiffs suffered ascertainable loss and actual damages as a direct and proximate result of Defendants' misrepresentations and its concealment of and failure to disclose material information. Plaintiffs who purchased or leased the Fraudulent Vehicles would not have purchased or leased them at all and/or—if the Vehicles' true nature had been disclosed and mitigated, and the Vehicles rendered legal to sell—would have paid significantly less for them. Plaintiffs also suffered diminished value of their vehicles, as well as lost or diminished use.

559.    As a direct and proximate result of Defendants' violations of the Virginia CPA, Plaintiffs have suffered injury-in-fact and/or actual damage.

560.    Defendants had an ongoing duty to all Audi customers to refrain from unfair and deceptive practices under the Virginia CPA in the course of its business.

561.    Defendants' violations present a continuing risk to Plaintiffs as well as to the general public. Defendants' unlawful acts and practices complained of herein affect the public interest.

562.    Pursuant to Va. Code § 59.1-204(A)–(B), Plaintiffs are entitled to the greater of actual damages or $500 for each plaintiff, attorneys' fees, and costs. Because Audi's actions were willful, Plaintiffs should each receive the greater of treble damages or $1,000.

**VIRGINIA COUNT 2**
**BREACH OF IMPLIED WARRANTY OF MERCHANTABILITY**
**(Va. Code §§ 8.2-314 and 8.2A-212)**
**(On Behalf of the Virginia Plaintiffs)**

563.    Plaintiffs re-allege and incorporate by reference all allegations of the preceding paragraphs as though fully set forth herein.

564.    The Defendants are and were at all relevant times "merchants" with respect to motor vehicles under Va. Code § 8.2-104(1) and 8.2A-103(1)(t), and "sellers" of motor vehicles under § 8.2-103(1)(d).

565.    With respect to leases, the Defendants are and were at all relevant times "lessors" of motor vehicles under Va. Code § 8.2A-103(1)(p).

566.    The Fraudulent Vehicles are and were at all relevant times "goods" within the meaning of Va. Code §§ 8.2-105(1) and 8.2A-103(1)(h).

567.    A warranty that the Fraudulent Vehicles were in merchantable condition and fit for the ordinary purpose for which vehicles are used is implied by law pursuant to Va. Code §§ 8.2-314 and 8.2A-212.

568.    The Fraudulent Vehicles were not in merchantable condition and were not fit for ordinary vehicles are used because they share a common defect in that they are equipped with defeat devices.  These defeat devices are designed to secretly limit emissions and increase fuel efficiency when the vehicles are being subject to regulatory emissions and fuel efficiency testing. However, when the Fraudulent Vehicles are in regular use on the road, they emit a substantially increased amount of noxious gasses.

569.    As a direct and proximate result of Audi's breach of the implied warranty of merchantability, Plaintiffs have been damaged in an amount to be proven at trial.

**VIRGINIA COUNT 3**
**BREACH OF EXPRESS WARRANTY**
**(Va. Code §§ 8.2-313 and 8.2A-210)**
**(On Behalf of the Virginia Plaintiffs)**

570.    Plaintiffs re-allege and incorporate by reference all preceding allegations as though fully set forth herein.

571.    The Defendants are and were at all relevant times "merchants" with respect to motor vehicles under Va. Code § 8.2-104(1) and 8.2A-103(1)(t), and "sellers" of motor vehicles under § 8.2-103(1)(d).

572.    With respect to leases, the Defendants are and were at all relevant times "lessors" of motor vehicles under Va. Code § 8.2A-103(1)(p).

573.    The Fraudulent Vehicles are and were at all relevant times "goods" within the meaning of Va. Code §§ 8.2-105(1) and 8.2A-103(1)(h).

574.    As set forth above in detail, the Fraudulent Vehicles are inherently defective in that they are equipped with "defeat devices."  These defeat devices are designed to secretly limit emissions and increase fuel efficiency when the vehicles are being subject to regulatory emissions and fuel efficiency testing. However, when the Fraudulent Vehicles are in regular use

on the road, they emit a substantially increased amount of noxious gasses.  The installation of the defeat device substantially impairs the use and value of the Fraudulent Vehicles to reasonable consumers.

575.   As a result of Audi's breach of their express warranties, Plaintiffs received goods whose defect substantially impairs their value to Plaintiffs.  Plaintiffs have been damaged as a result of, inter alia, the diminished value of Audi's products.

576.   As a direct and proximate result of Audi's breach of express warranties, Plaintiffs have been damaged in an amount to be determined at trial.

## WASHINGTON COUNTS

### WASHINGTON COUNT 1
### VIOLATIONS OF THE WASHINGTON CONSUMER PROTECTION ACT
### (Wash. Rev. Code Ann. §§ 19.86.010, et seq.)
### (On Behalf of the Washington Plaintiffs)

577.   Plaintiffs incorporate by reference each preceding paragraph as though fully set forth herein.

578.   Defendants and Plaintiffs are "persons" within the meaning of Wash. Rev. Code § 19.86.010(2).

579.   Audi is engaged in "trade" or "commerce" within the meaning of Wash. Rev. Code § 19.86.010(2).

580.   The Washington Consumer Protection Act ("Washington CPA") makes unlawful "[u]nfair methods of competition and unfair or deceptive acts or practices in the conduct of any trade or commerce." Wash. Rev. Code § 19.86.020.

581.   In the course of its business, Audi concealed and suppressed material facts concerning the Fraudulent Vehicles.  Defendants accomplished this by installing illegal defeat device software in the Fraudulent Vehicles that caused the vehicles to operate in a low emission

test mode only during emissions testing.  During normal operations, the Fraudulent Vehicles

would emit grossly larger quantities of noxious $CO_2$ gasses.  The result was what Audi

intended—the Fraudulent Vehicles passed emissions testing by way of deliberately induced false

readings. Plaintiffs had no way of discerning that Audi's representations were false and

misleading because Audi's defeat device software was extremely sophisticated technology.

Plaintiffs did not and could not unravel Audi's deception on their own.

582.    Audi thus violated the Act by, at minimum: employing deception, deceptive acts

or practices, fraud, misrepresentations, or concealment, suppression or omission of any material

fact with intent that others rely upon such concealment, suppression or omission, in connection

with the sale of Fraudulent Vehicles.

583.    Audi intentionally and knowingly misrepresented material facts regarding the

Fraudulent Vehicles with intent to mislead Plaintiffs.

584.    Audi knew or should have known that its conduct violated the Washington CPA

585.    Audi owed Plaintiffs a duty to disclose illegality, public health and safety risks,

the true nature of the Fraudulent Vehicles and the devaluing of safety at Audi, because Audi:

a.    possessed exclusive knowledge that they were manufacturing, selling, and
distributing vehicles throughout the United States that did not comply with
regulations;

b.    intentionally concealed the foregoing from regulators and Plaintiffs,; and/or

c.    made incomplete representations about the environmental cleanliness and
efficiency of the Fraudulent Vehicles generally, and the use of the defeat device in
particular, while purposefully withholding material facts from Plaintiffs that
contradicted these representations.

586.    Audi's fraudulent use of the "defeat device" and its concealment of the true

characteristics of the Fraudulent Vehicles' fuel consumption of $CO_2$ emissions were material to

Plaintiffs.

587.    Audi's unfair or deceptive acts or practices were likely to and did in fact deceive regulators and reasonable consumers, including Plaintiffs.

588.    Plaintiffs suffered ascertainable loss and actual damages as a direct and proximate result of Defendants' misrepresentations and its concealment of and failure to disclose material information. Plaintiffs who purchased or leased the Fraudulent Vehicles would not have purchased or leased them at all and/or—if the Vehicles' true nature had been disclosed and mitigated, and the Vehicles rendered legal to sell—would have paid significantly less for them. Plaintiffs also suffered diminished value of their vehicles, as well as lost or diminished use.

589.    As a direct and proximate result of Defendants' violations of the Washington CPA, Plaintiffs have suffered injury-in-fact and/or actual damage.

590.    Defendants had an ongoing duty to all Audi customers to refrain from unfair and deceptive practices under the Washington CPA in the course of its business.

591.    Defendants' violations present a continuing risk to Plaintiffs as well as to the general public. Defendants' unlawful acts and practices complained of herein affect the public interest.

592.    Pursuant to Wash. Rev. Code § 19.86.090, Plaintiffs seek an order enjoining Audi's unfair and/or deceptive acts or practices, damages, punitive damages, and attorneys' fees, costs, and any other just and proper relief available under the Washington CPA. Because Audi's actions were willful and knowing, Plaintiffs' damages should be trebled.

**WASHINGTON COUNT 2**
**BREACH OF IMPLIED WARRANTY OF MERCHANTABILITY**
**(Wash. Rev. Code §§ 62A.2-314 and 62A.2A-212)**
**(On Behalf of the Washington Plaintiffs)**

593.    Plaintiffs re-allege and incorporate by reference all allegations of the preceding paragraphs as though fully set forth herein.

594.    The Defendants are and were at all relevant times "merchants" with respect to motor vehicles under Wash. Rev. Code § 62A.2-104(1) and 62A.2A-103(1)(t), and "sellers" of motor vehicles under § 2.103(a)(4).

595.    With respect to leases, the Defendants are and were at all relevant times "lessors" of motor vehicles under Wash. Rev. Code § 62A.2A-103(1)(p).

596.    The Fraudulent Vehicles are and were at all relevant times "goods" within the meaning of Wash. Rev. Code §§ 62A.2-105(1) and 62A.2A-103(1)(h).

597.    A warranty that the Fraudulent Vehicles were in merchantable condition and fit for the ordinary purpose for which vehicles are used is implied by law pursuant to Wash. Rev. Code §§ 62A.2-314 and 62A.2A-212.

598.    The Fraudulent Vehicles were not in merchantable condition and were not fit for ordinary vehicles are used because they share a common defect in that they are equipped with defeat devices.  These defeat devices are designed to secretly limit emissions and increase fuel efficiency when the vehicles are being subject to regulatory emissions and fuel efficiency testing. However, when the Fraudulent Vehicles are in regular use on the road, they emit a substantially increased amount of noxious gasses.

599.    As a direct and proximate result of Audi's breach of the implied warranty of merchantability, Plaintiffs have been damaged in an amount to be proven at trial.

**WASHINGTON COUNT 3**
**BREACH OF EXPRESS WARRANTY**
**(Wash. Rev. Code §§ 62A.2-313 and 62A.2A-210)**
**(On Behalf of the Washington Plaintiffs)**

600.    Plaintiffs re-allege and incorporate by reference all preceding allegations as though fully set forth herein.

601.    The Defendants are and were at all relevant times "merchants" with respect to motor vehicles under Wash. Rev. Code § 62A.2-104(1) and 62A.2A-103(1)(t), and "sellers" of motor vehicles under § 2.103(a)(4).

602.    With respect to leases, the Defendants are and were at all relevant times "lessors" of motor vehicles under Wash. Rev. Code § 62A.2A-103(1)(p).

603.    The Fraudulent Vehicles are and were at all relevant times "goods" within the meaning of Wash. Rev. Code §§ 62A.2-105(1) and 62A.2A-103(1)(h).

604.    As set forth above in detail, the Fraudulent Vehicles are inherently defective in that they are equipped with "defeat devices."  These defeat devices are designed to secretly limit emissions and increase fuel efficiency when the vehicles are being subject to regulatory emissions and fuel efficiency testing. However, when the Fraudulent Vehicles are in regular use on the road, they emit a substantially increased amount of noxious gasses.  The installation of the defeat device substantially impairs the use and value of the Fraudulent Vehicles to reasonable consumers.

605.    As a result of Audi's breach of their express warranties, Plaintiffs received goods whose defect substantially impairs their value to Plaintiffs.  Plaintiffs have been damaged as a result of, inter alia, the diminished value of Audi's products.

606.    As a direct and proximate result of Audi's breach of express warranties, Plaintiffs have been damaged in an amount to be determined at trial.

**WASHINGTON COUNT 4**
**WASHINGTON LEMON LAW**
**(Wash. Rev. Code § 19.118.005, et al.)**
**(On Behalf of the Washington Plaintiffs)**

607.     Plaintiffs re-allege and incorporate by reference all preceding allegations as though fully set forth herein.

608.     Plaintiffs own or lease "new motor vehicles" within the meaning of Wash. Rev. Code § 19.118.021(12), because these vehicles are self-propelled primarily designed for the transportation of persons or property over the public highways and were originally purchased or leased at retail from a new motor vehicle dealer or leasing company in Washington. These vehicles do not include vehicles purchased or leased by a business as part of a fleet of ten or more vehicles at one time or under a single purchase or lease agreement or those portions of a motor home designated, used, or maintained primarily as a mobile dwelling, office, or commercial space.

609.     The Defendants are "manufacturer[s]" of the Fraudulent Vehicles within the meaning of Wash. Rev. Code § 19.118.021(8) because it is in the business of constructing or assembling new motor vehicles or is engaged in the business of importing new motor vehicles into the United States for the purpose of selling or distributing new motor vehicles to new motor vehicle dealers.

610.     Plaintiffs are "consumers" within the meaning of Wash. Rev. Code § 19.118.021(4) because they entered into an agreement or contract for the transfer, lease, or purchase of a new motor vehicle, other than for purposes of resale or sublease, during the eligibility period as defined by Wash. Rev. Code § 19.118.021(6).

611.     The Fraudulent Vehicles did not conform to their warranties as defined by Wash. Rev. Code § 19.118.021(22), during the "eligibility period," defined by Wash. Rev. Code §

19.118.021(6), or the coverage period under the applicable written warranty because they were not cleaner vehicles and contained a "defeat device" designed to circumvent state and federal emissions standards. Wash. Rev. Code § 19.118.031. These devices did in fact circumvent emissions standards and substantially impaired the use, market value, and safety of their motor vehicles.

612.    Audi had actual knowledge of the conformities during warranty periods. But the nonconformities continued to exist throughout this term, as they have not been fixed. Plaintiffs are excused from notifying Audi of the nonconformities because it was already fully aware of the problem—as it intentionally created it—and any repair attempt is futile.

613.    Audi has had a reasonable opportunity to cure the nonconformities because of its actual knowledge of, creation of, and attempt to conceal the nonconformities, but has not done so as required under Wash. Rev. Code § 19.118.031.

614.    For vehicles purchased, Plaintiffs demand a full refund of the contract price, all collateral charges, and incidental costs. Wash. Rev. Code § 19.118.041(1)(b).  For vehicles leased, Plaintiffs demand all payments made under the lease including but not limited to all lease payments, trade-in value or inception payment, security deposit, and all collateral charges and incidental costs. The consumer is also relieved of any future obligation to the lessor or lienholder. *Id.* Plaintiffs reject an offer of replacement and will retain their vehicles until payment is tendered.

**WEST VIRGINIA COUNTS**

**WEST VIRGINIA COUNT 1**
**VIOLATIONS OF THE CONSUMER CREDIT AND PROTECTION ACT**
**(W. Va. Code § 46A-1-101, et seq.)**
**(On Behalf of the West Virginia Plaintiffs)**

615.     Plaintiffs incorporate by reference each preceding paragraph as though fully set forth herein.

616.     Defendants and Plaintiffs are "persons" within the meaning of W. Va. Code § 46A-1-102(31).  Plaintiffs are "consumers" within the meaning of W. Va. Code §§ 46A-1-102(2) and 46A-1-102(12).

617.     Audi is engaged in "trade" or "commerce" within the meaning of W. Va. Code § 46A-6-102(6).

618.     The West Virginia Consumer Credit and Protection Act ("West Virginia CCPA") makes unlawful "[u]nfair methods of competition and unfair or deceptive acts or practices in the conduct of any trade or commerce."  W. Va. Code § 46A-6-104.

619.     In the course of its business, Audi concealed and suppressed material facts concerning the Fraudulent Vehicles.  Defendants accomplished this by installing illegal defeat device software in the Fraudulent Vehicles that caused the vehicles to operate in a low emission test mode only during emissions testing.  During normal operations, the Fraudulent Vehicles would emit grossly larger quantities of noxious $CO_2$ gasses.  The result was what Audi intended—the Fraudulent Vehicles passed emissions testing by way of deliberately induced false readings. Plaintiffs had no way of discerning that Defendants' representations were false and misleading because Audi's defeat device software was extremely sophisticated technology. Plaintiffs did not and could not unravel Audi's deception on their own.

620.     Audi thus violated the Act by, at minimum: employing deception, deceptive acts or practices, fraud, misrepresentations, or concealment, suppression or omission of any material fact with intent that others rely upon such concealment, suppression or omission, in connection with the sale of Fraudulent Vehicles.

621.     Audi intentionally and knowingly misrepresented material facts regarding the Fraudulent Vehicles with intent to mislead Plaintiffs.

622.     Audi knew or should have known that its conduct violated the West Virginia CCPA.

623.     Audi owed Plaintiffs a duty to disclose illegality, public health and safety risks, the true nature of the Fraudulent Vehicles and the devaluing of safety at Audi, because Audi:

   a.  possessed exclusive knowledge that they were manufacturing, selling, and distributing vehicles throughout the United States that did not comply with regulations;

   b.  intentionally concealed the foregoing from regulators and Plaintiffs,; and/or

   c.   made incomplete representations about the environmental cleanliness and efficiency of the Fraudulent Vehicles generally, and the use of the defeat device in particular, while purposefully withholding material facts from Plaintiffs that contradicted these representations.

624.     Audi's fraudulent use of the "defeat device" and its concealment of the true characteristics of the Defective Vehicles' fuel consumption of $CO_2$ emissions were material to Plaintiffs.

625.      Audi's unfair or deceptive acts or practices were likely to and did in fact deceive regulators and reasonable consumers, including Plaintiffs.

626.     Plaintiffs suffered ascertainable loss and actual damages as a direct and proximate result of Defendants' misrepresentations and its concealment of and failure to disclose material information. Plaintiffs who purchased or leased the Fraudulent Vehicles would not have

purchased or leased them at all and/or—if the Vehicles' true nature had been disclosed and mitigated, and the Vehicles rendered legal to sell—would have paid significantly less for them. Plaintiffs also suffered diminished value of their vehicles, as well as lost or diminished use.

627.    As a direct and proximate result of Defendants' violations of the West Virginia CCPA,

628.    Plaintiffs have suffered injury-in-fact and/or actual damage.

629.    Defendants had an ongoing duty to all Audi customers to refrain from unfair and deceptive practices under the West Virginia CCPA in the course of its business.

630.    Defendants' violations present a continuing risk to Plaintiffs as well as to the general public. Defendants' unlawful acts and practices complained of herein affect the public interest.

631.    Pursuant to W. Va. Code § 46A-6-106(a), Plaintiffs seek an order enjoining Audi's unfair and/or deceptive acts or practices, damages, punitive damages, and any other just and proper relief available under the West Virginia CCPA.

632.    Audi failed to remedy its unlawful conduct within the requisite time period; therefore, Plaintiffs seek all damages and relief to which Plaintiffs are entitled.

## WEST VIRGINIA COUNT 2
## BREACH OF IMPLIED WARRANTY OF MERCHANTABILITY
### (W. Va. Code §§ 46-2-314 and 46-2A-212)
### (On Behalf of the West Virginia Plaintiffs)

633.    Plaintiffs re-allege and incorporate by reference all allegations of the preceding paragraphs as though fully set forth herein.

634.    The Defendants are and were at all relevant times "merchants" with respect to motor vehicles under W. Va. Code § 46-2-104(1) and 46-2A-103(1)(t), and "sellers" of motor vehicles under § 46-2-103(1)(d).

635.   With respect to leases, the Defendants are and were at all relevant times "lessors" of motor vehicles under W. Va. Code § 46-2A-103(1)(p).

636.   The Fraudulent Vehicles are and were at all relevant times "goods" within the meaning of W. Va. Code §§ 46-2-105(1) and 46-2A-103(1)(h).

637.   A warranty that the Fraudulent Vehicles were in merchantable condition and fit for the ordinary purpose for which vehicles are used is implied by law pursuant to W. Va. Code §§ 46-2- 314 and 46-2A-212.

638.   The Fraudulent Vehicles were not in merchantable condition and were not fit for ordinary vehicles are used because they share a common defect in that they are equipped with defeat devices.  These defeat devices are designed to secretly limit emissions and increase fuel efficiency when the vehicles are being subject to regulatory emissions and fuel efficiency testing. However, when the Fraudulent Vehicles are in regular use on the road, they emit a substantially increased amount of noxious gasses.

639.   As a direct and proximate result of Audi's breach of the implied warranty of merchantability, Plaintiffs have been damaged in an amount to be proven at trial.

**WEST VIRGINIA COUNT 3**
**BREACH OF EXPRESS WARRANTY**
**(W. Va. Code §§ 46-2-313 and 46-2A-210)**
**(On Behalf of the West Virginia Plaintiffs)**

640.   Plaintiffs re-allege and incorporate by reference all preceding allegations as though fully set forth herein.

641.   The Defendants are and were at all relevant times "merchants" with respect to motor vehicles under W. Va. Code §§ 46-2-104(1) and 46-2A-103(1)(t), and "sellers" of motor vehicles under § 46-2-103(1)(d).

642.     With respect to leases, the Defendants are and were at all relevant times "lessors" of motor vehicles under W. Va. Code § 46-2A-103(1)(p).

643.     The Fraudulent Vehicles are and were at all relevant times "goods" within the meaning of W. Va. Code §§ 46-2-105(1) and 46-2A-103(1)(h).

644.     As set forth above in detail, the Fraudulent Vehicles are inherently defective in that they are equipped with "defeat devices." These defeat devices are designed to secretly limit emissions and increase fuel efficiency when the vehicles are being subject to regulatory emissions and fuel efficiency testing. However, when the Fraudulent Vehicles are in regular use on the road, they emit a substantially increased amount of noxious gasses. The installation of the defeat device substantially impairs the use and value of the Fraudulent Vehicles to reasonable consumers.

645.     As a result of Audi's breach of their express warranties, Plaintiffs received goods whose defect substantially impairs their value to Plaintiffs. Plaintiffs have been damaged as a result of, inter alia, the diminished value of Audi's products.

646.     As a direct and proximate result of Audi's breach of express warranties, Plaintiffs have been damaged in an amount to be determined at trial.

**WEST VIRGINIA COUNT 4**
**BREACH OF NEW MOTOR VEHICLE WARRANTY**
**(WEST VIRGINIA "LEMON LAW")**
**(W. Va. Code §§ 46A-6A-1, et seq.)**
**(On Behalf of the West Virginia Plaintiffs)**

647.     Plaintiffs re-allege and incorporate by reference all paragraphs as though fully set forth herein.

648.     Plaintiffs who purchased or leased the Fraudulent Vehicles in West Virginia are "consumers" within the meaning of W. Va. Code § 46A-6A-2(1).

649.    The Defendants are "manufacturer[s]" of the Fraudulent Vehicles within the meaning of W. Va. Code § 46A-6A-2(2).

650.    The Fraudulent Vehicles are "motor vehicles" as defined by W. Va. Code § 46A-6A-2(4).

651.     As set forth above in detail, the Fraudulent Vehicles are inherently defective in that they are equipped with "defeat devices."  These defeat devices are designed to secretly limit emissions and increase fuel efficiency when the vehicles are being subject to regulatory emissions and fuel efficiency testing. However, when the Fraudulent Vehicles are in regular use on the road, they emit a substantially increased amount of noxious gasses.  The installation of the defeat device substantially impairs the use and value of the Fraudulent Vehicles to reasonable consumers.

652.    As a result of Audi's breach of their express warranties, Plaintiffs received goods whose defect substantially impairs their value to Plaintiffs.  Plaintiffs have been damaged as a result of, inter alia, the diminished value of Audi's products.

653.    Audi failed to offer to cure within the requisite statutory time period.  Plaintiffs therefore seek all damages and relief available against the Defendants under the West Virginia Lemon Law.

654.    As a direct and proximate result of the Defendants' breaches of their duties under West Virginia's Lemon Law, the Plaintiffs received goods whose defect substantially impairs their value. Plaintiffs have been damaged by the diminished market value of the vehicles along with the compromised functioning and/or non-use of their Fraudulent Vehicles.

655.    The Defendants have a duty under § 46A-6A-3 to make all repairs necessary to correct the defect herein described to bring the Fraudulent Vehicles into conformity with all

-107-

written warranties. In the event that the Defendants cannot affect such repairs, they have a duty to replace each Fraudulent Vehicle with a comparable new motor vehicle that conforms to the warranty.

656.    As a result of the Defendants' breaches, the Plaintiffs are entitled to the following:

a.      Revocation of acceptance and refund of the purchase price, including, but not limited to, sales tax, license and registration fees, and other reasonable expenses incurred for the purchase of the new motor vehicle, or if there be no such revocation of acceptance, damages for diminished value of the motor vehicle;

b.      Damages for the cost of repairs reasonably required to conform the motor vehicle to the express warranty;

c.      Damages for the loss of use, annoyance or inconvenience resulting from the nonconformity, including, but not limited to, reasonable expenses incurred for replacement transportation during any period when the vehicle is out of service by reason of the nonconformity or by reason of repair; and

d.      Reasonable attorney fees. W. Va. Code § 46A-6A-4(b)(1)-(4).

## WISCONSIN COUNTS

### WISCONSIN COUNT 1
### VIOLATIONS OF THE WISCONSIN DECEPTIVE TRADE PRACTICES ACT
### (Wis. Stat. § 100.18)
### (On Behalf of the Wisconsin Plaintiffs)

657.    Plaintiffs incorporate by reference each preceding paragraph as though fully set forth herein.

658.    Plaintiffs are members of "the public" within the meaning of Wis. Stat. § 100.18(1).  Plaintiffs purchased or leased one or more Fraudulent Vehicles.

659.    Plaintiffs are "persons" under the Wisconsin Deceptive Trade Practices Act ("Wisconsin DTPA"), Wis. Stat. § 100.18(1).

660.    Audi is a "person, firm, corporation or association" within the meaning of Wis. Stat. § 100.18(1).

661.   The Wisconsin DTPA makes unlawful any "representation or statement of fact which is untrue, deceptive or misleading." Wis. Stat. § 100.18(1).

662.   In the course of its business, Audi concealed and suppressed material facts concerning the Fraudulent Vehicles.  Defendants accomplished this by installing illegal defeat device software in the Fraudulent Vehicles that caused the vehicles to operate in a low emission test mode only during emissions testing.  During normal operations, the Fraudulent Vehicles would emit grossly larger quantities of noxious $CO_2$ gasses.  The result was what Audi intended—the Fraudulent Vehicles passed emissions testing by way of deliberately induced false readings. Plaintiffs had no way of discerning that Audi's representations were false and misleading because Audi's defeat device software was extremely sophisticated technology. Plaintiffs did not and could not unravel Audi's deception on their own.

663.   Audi thus violated the Act by, at minimum: employing deception, deceptive acts or practices, fraud, misrepresentations, or concealment, suppression or omission of any material fact with intent that others rely upon such concealment, suppression or omission, in connection with the sale of Fraudulent Vehicles.

664.   Audi intentionally and knowingly misrepresented material facts regarding the Fraudulent Vehicles with intent to mislead Plaintiffs.

665.   Audi knew or should have known that its conduct violated the Wisconsin DTPA.

666.   Audi owed Plaintiffs a duty to disclose illegality, public health and safety risks, the true nature of the Fraudulent Vehicles and the devaluing of safety at Audi, because Audi:

   a.   possessed exclusive knowledge that they were manufacturing, selling, and distributing vehicles throughout the United States that did not comply with regulations;

   b.   intentionally concealed the foregoing from regulators and Plaintiffs,; and/or

    c.   made incomplete representations about the environmental cleanliness and efficiency of the Fraudulent Vehicles generally, and the use of the defeat device in particular, while purposefully withholding material facts from Plaintiffs that contradicted these representations.

667.    Audi's fraudulent use of the "defeat device" and its concealment of the true characteristics of the Fraudulent Vehicles' fuel consumption of $CO_2$ emissions were material to Plaintiffs.

668.    Audi's unfair or deceptive acts or practices were likely to and did in fact deceive regulators and reasonable consumers, including Plaintiffs.

669.    Plaintiffs suffered ascertainable loss and actual damages as a direct and proximate result of Defendants' misrepresentations and its concealment of and failure to disclose material information. Plaintiffs who purchased or leased the Fraudulent Vehicles would not have purchased or leased them at all and/or—if the Vehicles' true nature had been disclosed and mitigated, and the Vehicles rendered legal to sell—would have paid significantly less for them. Plaintiffs also suffered diminished value of their vehicles, as well as lost or diminished use.

670.    As a direct and proximate result of Defendants' violations of the Wisconsin DTPA, Plaintiffs have suffered injury-in-fact and/or actual damage.

671.    Defendants had an ongoing duty to all Audi customers to refrain from unfair and deceptive practices under the Wisconsin DTPA in the course of its business.

672.    Defendants' violations present a continuing risk to Plaintiffs as well as to the general public. Defendants' unlawful acts and practices complained of herein affect the public interest.

673.    Plaintiffs seek damages, court costs and attorneys' fees under Wis. Stat. § 100.18(11)(b)(2), and any other just and proper relief available under the Wisconsin DTPA.

**WISCONSIN COUNT 2**
**BREACH OF EXPRESS WARRANTY**
**(Wis. Stat. §§ 402.313 and 411.210)**
**(On Behalf of the Wisconsin Plaintiffs)**

674.    Plaintiffs re-allege and incorporate by reference all preceding allegations as though fully set forth herein.

675.    The Defendants are and were at all relevant times "merchants" with respect to motor vehicles under Wis. Stat. § 402.104(3) and 411.103(1)(t), and "sellers" of motor vehicles under § 402.103(1)(d).

676.    With respect to leases, the Defendants are and were at all relevant times "lessors" of motor vehicles under Wis. Stat. § 411.103(1)(p).

677.    The Fraudulent Vehicles are and were at all relevant times "goods" within the meaning of Wis. Stat. §§ 402.105(1)(c) and 411.103(1)(h).

678.    As set forth above in detail, the Fraudulent Vehicles are inherently defective in that they are equipped with "defeat devices." These defeat devices are designed to secretly limit emissions and increase fuel efficiency when the vehicles are being subject to regulatory emissions and fuel efficiency testing. However, when the Fraudulent Vehicles are in regular use on the road, they emit a substantially increased amount of noxious gasses. The installation of the defeat device substantially impairs the use and value of the Fraudulent Vehicles to reasonable consumers.

679.    As a result of Audi's breach of their express warranties, Plaintiffs received goods whose defect substantially impairs their value to Plaintiffs. Plaintiffs have been damaged as a result of, inter alia, the diminished value of Audi's products.

680.    As a direct and proximate result of Audi's breach of express warranties, Plaintiffs have been damaged in an amount to be determined at trial.

### WISCONSIN COUNT 3
### BREACH OF IMPLIED WARRANTY OF MERCHANTABILITY
### (Wis. Stat. §§ 402.314 and 411.212)
### (On Behalf of the Wisconsin Plaintiffs)

681.     Plaintiffs re-allege and incorporate by reference all allegations of the preceding paragraphs as though fully set forth herein.

682.     The Defendants are and were at all relevant times "merchants" with respect to motor vehicles under Wis. Stat. § 402.104(3) and 411.103(1)(t), and "sellers" of motor vehicles under § 402.103(1)(d).

683.     With respect to leases, the Defendants are and were at all relevant times "lessors" of motor vehicles under Wis. Stat. § 411.103(1)(p).

684.     The Fraudulent Vehicles are and were at all relevant times "goods" within the meaning of Wis. Stat. §§ 402.105(1)(c) and 411.103(1)(h).

685.     A warranty that the Fraudulent Vehicles were in merchantable condition and fit for the ordinary purpose for which vehicles are used is implied by law pursuant to Wis. Stat. §§ 402.314 and 411.212.

686.     The Fraudulent Vehicles were not in merchantable condition and were not fit for ordinary vehicles are used because they share a common defect in that they are equipped with defeat devices.  These defeat devices are designed to secretly limit emissions and increase fuel efficiency when the vehicles are being subject to regulatory emissions and fuel efficiency testing. However, when the Fraudulent Vehicles are in regular use on the road, they emit a substantially increased amount of noxious gasses.

687.     As a direct and proximate result of Audi's breach of the implied warranty of merchantability, Plaintiffs have been damaged in an amount to be proven at trial.

## PRAYER FOR RELIEF

**WHEREFORE**, Plaintiffs respectfully request this Court:

A.      Award damages, including compensatory and exemplary damages, to Plaintiffs;

B.      Award Plaintiffs actual damages sustained;

C.      Award Plaintiffs such additional damages, over and above the amount of their actual damages, that are authorized and warranted by law, applicable;

D.      Grant restitution to Plaintiffs and require Defendants to disgorge inequitable gains;

E.      Grant appropriate injunctive and/or declaratory relief, including, without limitation, an order that requires Defendants to repair, recall, and/or replace the Fraudulent Vehicles and to extend the applicable warranties to a reasonable period of time, or, at a minimum, to provide Plaintiffs with appropriate curative notice regarding the existence and cause of the defect;

F.      Award Plaintiffs punitive damages;

G.      Award Plaintiffs their reasonable attorneys' fees and reimbursement of all costs for the prosecution of this action; and

H.      Award such other relief as this Court deems just and appropriate.

## JURY DEMAND

Pursuant to Federal Rule of Civil Procedure 38(b), Plaintiffs hereby demand a trial by jury on all issues so triable.

DATED:  April 27, 2017

HEYGOOD, ORR & PEARSON


By: /s/ *Michael E. Heygood*
MICHAEL E. HEYGOOD,
PSC Member/MDL No. 2672-CRB
Texas Bar No. 00784267
CHARLES MILLER,
ESQ./SBN: 276523
**HEYGOOD, ORR & PEARSON**
6363 North State Highway 161
Suite 450
Irving, Texas 75038
Telephone: (214) 237-9001
Facsimile: (214) 237-9002

Admission *Pro Hac Vice*
to be Sought for:

ERIC D. PEARSON,
Texas Bar No. 15690472
**HEYGOOD, ORR & PEARSON**
6363 North State Highway 161
Suite 450
Irving, Texas 75038
Telephone: (214) 237-9001
Facsimile: (214) 237-9002

**Attorney for Plaintiffs**